Gerald Singleton (OSB 210955)
gsingleton@singletonschreiber.com
SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Ste. 1100
Portland, OR 97204
Tel: 503-272-7866

Meagan Verschueren (CA 313117) *Pro Hac Vice applicant*
mverschueren@singletonschreiber.com
Katie Llamas (CA 303983) *Pro Hac Vice applicant*
kllamas@singletonschreiber.com
SINGLETON SCHREIBER, LLP
591 Camino de la Reina, Ste. 1025
San Diego, CA 92108
Tel. (619) 771-3473

Attorneys for Plaintiff JANE DOE

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JANE DOE, an individual,<br><br>       Plaintiff,<br><br>    v.<br><br>Portland Hospitality Investments, LLC; Union Avenue, LLC; Nayna Patel, an individual; Bhanubhai B. Patel, an individual; Alkesh Patel; and Bindiya Patel.; and DOES 1 through 100, inclusive,<br><br>       Defendants. | Case No.:<br><br>Unlimited Jurisdiction<br><br>**COMPLAINT FOR DAMAGES AND INJURIES**<br><br>**JURY TRIAL DEMANDED**<br><br>**Damages in excess of $100,000** |

## COMPLAINT

COMES NOW the Plaintiff JANE DOE by and through the undersigned counsel, and respectfully submits this Complaint for damages and makes the following averments.

---

**INTRODUCTION**

1. For years, sex trafficking ventures have openly operated in and out of hotels throughout the United States.

2. Of all industries that participate in sex trafficking, human trafficking continues to be most prevalent and lucrative in the hotel and hospitality industry.

3. Criminals parade their misconduct openly at certain hotel and motel properties throughout the United States, and the hotels and motels profit from providing harbor for the underlying heinous crimes. The hotel and hospitality industry continue to create and expand the environment for traffickers to harbor victims and neglect taking reasonable steps to prevent such known criminal misconduct, instead choosing to earn a profit at the expense of human life, human rights, and human dignity.

4. The hotel industry has provided the means, environment, and support for human trafficking industry to become the second largest profitable criminal activity in the United States.[1]

5. As the trafficking industry grows, so have Defendants and their profits through the expansion of their properties and rooms rented for this explicit and apparent purpose. Some hotels and motels, by and through their owners and employees, directly participate in the sex trafficking of human beings. The Defendants in this lawsuit are some of those owners.

6. Jane Doe files this civil lawsuit seeking compensation and justice for the harms she suffered as a result of being sex trafficked and sold for sex at hotels owned, operated, managed, and controlled by Defendants and their employees.

**PARTIES**

7. Jane Doe is a natural person who was trafficked for sex in the State of

---

[1] https://www.mbfpreventioneducation.org/human-trafficking-is-now-the-second-most-profitable-criminal-activity-in-the-united-states/

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

1    Oregon. Jane Doe is a survivor of sex trafficking. Jane Doe was trafficked for sex from a

2    young age and from 2016 to 2022, she was harbored, beat, tortured and forced to engage

3    in commercial sex acts for the benefit of her traffickers and Defendants at properties owned

4    and controlled by Defendants in this case.

5        a. Due to the sensitive and private nature of, and the likely retaliatory

6            response to, these allegations, this Complaint identifies Jane Doe by a

7            pseudonym only. Jane Doe will move the Court to proceed under a

8            pseudonym in all filings, all public Court proceedings, and to limit the

9            disclosure of information about Jane Doe's true identity in order to protect

10           Jane Doe and her identity.

11       b. Generally, pleadings must state the name of all parties.[2] However,

12           exceptions exist when the issues involved may result in retaliation or

13           harm to the Plaintiff.[3] For good cause, the Court may issue an order to

14           protect a party or person from undue harms and burdens.

15       c. To maintain her privacy and safety, Jane Doe should not be compelled to

16           disclose her identity. Jane Doe's privacy interest substantially outweighs

17           the customary practice of judicial openness.[4] Jane Doe would be in danger

18           of being forced back into trafficking or killed should her traffickers or their

19           associates learn information about her through publicly filed documents

20           in this action. Additionally, Jane Doe's life could be put in grave danger

21           should her traffickers or their associates learn information about her or

22           her whereabouts through publicly filed documents in this action or that

23

24       [2] Fed. R. Civ. P. 10(a).
         [3] See WA Cases e.g., Doe v. Penzato, 2011 U.S. Dist. LEXIS 51681, *6-9 (N.D. Cal. May 13, 2011);
25   Roe v. St. Louis
         Univ., 2009 U.S. Dist. LEXIS 27716, *13, (E.D. Mo. Apr. 2, 2009).
26       [4] See WASHINGTON cases *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (internal citation and
     quotations omitted).

COMPLAINT FOR DAMAGES AND INJURIES                     SINGLETON SCHREIBER
                                                        591 CAMINO DE LA REINA, STE. 1025
                                                        SAN DIEGO, CA 92108
                                                        (619) 771-3473

she is speaking out about what happened to her. Moreover, Defendants will not be prejudiced. Jane Doe will agree to reveal her identity to Defendants for the limited purpose of investigating Jane Doe's claims once the parties have entered into a protective order.

8.      Defendant Portland Hospitality Investments, LLC is a for-profit corporation with its principal place of business in Portland, Oregon . Portland Hospitality Investments, LLC owned and operated the Portland Inn motel located at 405 N.E. Columbia Blvd., Portland, Oregon 97211 at all relevant times that Plaintiff was trafficked there.

9.      Defendant Union Avenue, LLC is a for-profit corporation with its principal place of business in Portland, Oregon. Union Avenue, LLC owned and operated the Union Avenue Motel located at 59 N.E. Gertz Road, Portland, Oregon 97211 at all relevant times that Plaintiff was trafficked there.

10.     Defendant Nayna Patel is an individual resident of Portland, Oregon that owned and operated the Palms Motel located at 3801 N. Interstate Avenue, Portland, Oregon 97227 at all relevant times that Plaintiff was trafficked there.

11.     Defendant Bhanubhai B. Patel is an individual resident of Portland, Oregon that owned and operated the Palms Motel located at 3801 N. Interstate Avenue, Portland, Oregon 97227 at all relevant times that Plaintiff was trafficked there.

12.     Defendant Alkesh Patel is an individual resident of Portland, Oregon that owned and operated the Palms Motel located at 3801 N. Interstate Avenue, Portland, Oregon 97227 at all relevant times that Plaintiff was trafficked there.

13.     Defendant Bindiya Patel is an individual resident of Portland, Oregon that owned and operated the Palms Motel located at 3801 N. Interstate Avenue, Portland, Oregon 97227 at all relevant times that Plaintiff was trafficked there.

## JURSIDCITION AND VENUE

14.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because

this action involves a federal question under the Trafficking Victims Protection Reauthorization Act ("TVPRA").

15.    Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action, including the Defendants' misconduct and omissions, led to injuries that occurred in the judicial district where this action is brought.

16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because, pursuant to 28 U.S.C. §§ 1391(c)(2) and 1391(d), at least one Defendant is a resident of Portland, Oregon.

## SEX TRAFFICKING UNDER FEDERAL LAW

17.    Sex trafficking is the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of causing the person to engage in a commercial sex act either (1) before the person turns eighteen (18) years old; or (2) through force, fraud, or coercion.[5]

18.    The requirements for liability under the TVPRA on a beneficiary theory can be stated as follows: (1) the person or entity "knowingly benefits, financially or by receiving anything of value" (2) "from participating in a venture" (3) that the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

19.    "Sex trafficking" is defined by the TVPRA under 22 U.S.C. § 7102(12) as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act."

20.    The term "severe forms of trafficking in persons" includes "sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age." 22 U.S.C. § 7102(11).

---

[5] 18 U.S.C. §1591; 22 U.S.C. § 7102.

21.    Plaintiff's injuries are indivisible and cannot be separated. Plaintiff's injuries are the result of continued instances of ongoing violent, traumatizing sexual exploitation.

22.    Plaintiff's injuries are mental, emotional, physical and psychological in nature and derive from the trafficking period and the venture between trafficker Defendants and her individual traffickers.

23.    Plaintiff's injuries, particularly her ongoing mental, emotional, and psychological injuries, have no reasonable basis on which to determine the relative contribution of a particular defendant's conduct to the single harm.

24.    Plaintiff was continuously captive, forced, coerced, and controlled from 2017 through 2022 such that the continuing violation doctrine applies because the wrongful conduct of Defendants and Plaintiff's traffickers formed a series of acts that were ongoing so as to form a continuous, single violation.

## FACTUAL ALLEGATIONS

**The Hotel Industry Has Played a Significant Role in the Sex Trafficking Industry for Decades.**

25.    Human trafficking, including sex trafficking, has been prevalent at hotels and motels for decades.  Hotel and motel owners, operators and controllers have known about it for decades. Traffickers have used hotels and motels to sell their victims for decades because numerous hotels and motels have knowingly allowed it to happen and failed to report or stop it so that the hotels and motels could continue to regularly profit from the room rentals.

26.    For decades, numerous hotel and motel owners, operators and controllers have accommodated traffickers by accepting cash payments nightly from traffickers for extended stays; giving them two rooms next to each other so that one can be used by buyers to have their way with victims each day or night; giving rooms away from other guests; warning traffickers about police activity and stings; calling traffickers to come back when police have left the properties; lying to the police and public about trafficking that occurs

at their properties; not reporting criminal activity and the trafficking that they observe; and participating as buyers by paying for sex with victims and/or giving traffickers rooms in exchange for sex with victims or drugs.

27.    In 2017, human trafficking was noted as the world's fastest growing crime. While the term "human trafficking" incorporates all forced labor, the sex trafficking industry alone earns an estimated $99 billion each year making it the second largest illicit crime industry behind only the sale of all illegal drugs.

28.    The hospitality industry plays a crucial role in the sex trade.  Hotels have long profited from their reputations as havens of privacy and discretion for the offenders. Despite the known risks and known trafficking crimes, motels, including the Defendants' subject motels, have offered and continue to offer anonymity and non-traceability to the traffickers, making them ideal venues for crime and sex trafficking in particular.  Motels, including the Defendants' subject motels, knowingly harbor traffickers, including sellers and buyers, and victims.

29.    Today, sex slavery is pervasive in the United States, and hotels are the primary place where it happens.  For years, sex traffickers have "been able to reap their profits with little risk when attempting to operate within hotels."

30.    According to National Human Trafficking Hotline statistics, hotels are the top-reported venue, even over commercial front brothels, where sex trafficking acts occur. Traffickers and buyers alike frequently use hotel rooms to exploit victims.

31.    In 2014, 92% of calls received by the National Human Trafficking Hotline involved reports of sex trafficking taking place at hotels.  Hotels have been found to account for over 90% of commercial exploitation of children.

32.    Due to the overall hospitality industry's participation, complacency, complicity, negligence, intentional wrongful acts and reckless disregard related to sex trafficking, hotels are the venue of choice for sex trafficking.  Traffickers and buyers

COMPLAINT FOR DAMAGES AND INJURIES                     SINGLETON SCHREIBER
                                                    591 CAMINO DE LA REINA, STE. 1025
                                                    SAN DIEGO, CA 92108
                                                    (619) 771-3473

capitalize on the hotel industry's general refusal to (1) adopt and enforce companywide anti-trafficking policies from the corporate to the property level, (2) train staff on what to look for and how to respond, and/or (3) establish safe and secure reporting mechanisms for those at the point of sale.

33.    Every day, thousands of hotel employees witness signs of sex trafficking and commercial exploitation. Thus, the hospitality industry has the greatest reach to prevent, identify and thwart sexual exploitation where it is most likely to occur—which is on their property and in their view.

34.    Hotels and motels have the highest obligation to protect their guests from known dangers, including sex trafficking and sexual exploitation and should be held accountable when they fail to do so and negligently or knowingly choose to participate in the sex trade for profits. As stated in a publication by the Cornell University School of Hospitality, "the hospitality industry is undoubtedly involved in the sex trafficking industry…and therefore has an inherent responsibility to deter the crime and can be liable for failing to do so."

35.    Even estimates by attorneys for the hospitality industry indicate that eight (8) out of ten (10) arrests for human trafficking occur in or around hotels.  The 2016 Trafficking in Persons Report issued by the United States Department of State also confirmed that human trafficking occurs in the hospitality industry in the United States.

36.    The complicity and participation of the hospitality industry is essential to the perpetuation of human trafficking, allowing traffickers to remain transient, collect profits, and evade detection by law enforcement. Sex trafficking ventures move from place to place, and usually from hotel to hotel, so that they are less visible to law enforcement. Similarly, sex traffickers also want to keep their victims moving from place to place to isolate them from any possible means of escape or rescue. Traffickers are also very selective in the hotels and motels that they stay at for periods of time and especially long periods of time.

Traffickers know which hotel owners are willing to commit or allow crime at their property for profit. Traffickers are also well aware of the seclusion and anonymity attendant with booking rooms with certain hotels and hotel chains, including the motels at issue in this Complaint — they know it is unlikely that they will be disturbed and highly unlikely that hotels will act to protect victims. Instead, hoteliers like Defendants protect traffickers and profits.

37.    Because of this link between hotels and sex trafficking, government agencies and non-profits have devoted significant efforts for decades to educate the hotel industry and hotel owners and management companies on best practices for identifying and responding to sex trafficking.

38.    Multiple agencies and organizations who actively combat sex trafficking, including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the Washington Attorney General, Love 146, and EPCAT, among numerous others, have established publicly available recommended policies and procedures for recognizing the signs and red flags of sex trafficking.

39.    Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking, which Defendants have been aware of or should have been aware of since before Plaintiff was trafficked, are specific to the hotel industry. These include learning to identify warning signs and indicators of sex trafficking so that it can be stopped. Signs include but are not limited to:

      a.  Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

      b.  Individuals show signs of physical abuse, restraint, and/or confinement;

      c.  Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

d. Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

e. Individuals lack freedom of movement or are constantly monitored;

f. Individuals avoid eye contact and interaction with others;

g. Individuals have no control over or possession of money or ID;

h. Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;

i. Individuals have few or no personal items—such as no luggage or other bags;

j. A group of girls appears to be traveling with an older female or male;

k. A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

l. Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;

m. Possession and presence of bulk sexual paraphernalia such as condoms or lubricant;

n. Possession or use of multiple cell phones;

o. Possession or use of large amounts of cash or pre-paid cards;

p. Inability to come and go freely from the hotel;

q. People watching others from vehicles or by loitering around the premises;

r. Solicitation in and around the hotel;

s. Money exchanged in common areas, including hallways, lobbies, and parking lots;

t. Women dressed provocatively and accompanied by men;

u. Men or women with weapons;

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

v.   Multiple non-guest men coming in and out of a particular hotel room;

w.   Signs of injury on men or women whom seem to be controlled or watched by others;

x.   Sexual supplies including lubricants and devices in rooms visible to cleaning staff;

y.   Towels with blood;

z.   Excess towels and sheet requested per night;

aa. Excessive condoms in trash taken by cleaning staff;

bb. Signs of verbal and physical abuse, including yelling, screaming, and signs of physical injury;

cc. Women appearing to be under the influence of drugs or alcohol while being transported in and out of the hotel or taken from room to room;

dd. Asking for rooms away from other guests;

ee. Asking for rooms with separate entrances/exits that can be propped open for non-guests;

ff.  Paying cash on a nightly basis or in increments for extended periods of time;

gg. Paying with stolen credit cards; and

hh. Paying with credit cards online that are not in hand or do not have a matching ID.

40.     At all times of trafficking alleged herein, Defendants understood the practical and legal association between commercial sex, forced and coerced commercial sex, and sex trafficking in a hotel environment. Defendants knew or should have known that signs of commercial sex (prostitution) activity, with signs of a trafficker, force or coercion,  in their hotels were in fact signs of sex trafficking and should have seen the obvious and clear signs of the sex trafficking of Plaintiff that were observed by and observable by Defendants.

41.    Defendants were aware or should have been aware of these signs of sex trafficking when operating, controlling, and managing their motel properties, including the subject properties where Plaintiff was trafficked, when enacting and enforcing policies and procedures applicable to those motels and when training, educating, and supervising the staff of the motels.

42.    Given the prevalence of human trafficking in hotels and motels, and the abundance of information about how franchisors, brands, owners, operators and employees can identify and respond to this trafficking, it has become apparent that the decision of Defendants to continue generating revenue from traffickers without taking reasonable steps to identify and prevent trafficking in its hotels and motels, was a conscious decision to financially benefit by supporting and facilitating unlawful sex trafficking, including the trafficking of Plaintiff.

43.    The United States is ranked one of the worst countries in the world for human trafficking according to a 2019 report released by the Department of State.

44.    The State Government of Oregon has stated that the "cannabis <u>and hospitality</u> industries find themselves on the front lines of confronting this tragic issue." (Emphasis added.)   Oregon publishes information and training materials online. The Oregon Legislature has charged the OLCC with educating licensees and permittees about trafficking and maintaining a reporting system. Licensees and their employees are required to report any suspected human or sex trafficking occurring on a licensed premises to law enforcement and the OLCC.

45.    The Asian American Hotel Owners Association, the American Hotel and Lodging Association, and the Oregon Restaurant and Lodging Association, and dozens of other hotel associations have had a complete guide and trainings on how to prevent human trafficking at hotels for several years, including during the times and before Plaintiff was trafficked at Defendants' motels.

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

46.    The decades-old problem still exists, and some of the defendants are still participating in sex trafficking ventures.

47.    Other victims were trafficked at the subject properties described herein during the times that Plaintiff was trafficked there.  The trafficking of several women and girls was apparent, obvious and noticeable to Plaintiff while she was being trafficked at the subject motels.

48.    Washington and Oregon are known as sex trafficking hubs within a national and global sex trafficking circuit.

49.    In 2023, it was reported: "We're getting reports frequently, weekly, that there are children out there walking 'the Blade,'" said Portland Police Bureau Sgt. Kristi Butcher, using a term for an area in Northeast Portland with high rates of sex trafficking, similar to Seattle's Track. "We need to get serious about our conversations of what this really is, and start listening to survivors and coming up with real solutions. Because the way that it's working right now — it's not working."

50.    Traffickers have been openly running their trafficking operations in Portland, Oregon for years.

51.    The Portland Police Bureau's Human Trafficking Unit have continued to execute missions as recent as 2024 and 2025 that have resulted in large-scale arrests of human traffickers in the area.  The Unit reported that survivors are often reluctant to come forward or speak out due to fear of retaliation and/or their safety.

52.    Hotel and motel owners and operators in Portland, including and especially the Patels, have known that sex trafficking is occurring at their properties for decades, since at least the 1980s.  Capt. Robert Tobin, head of the Drug and Vice Division, recently said about the hospitality owners, "You can claim ignorance, but it doesn't take a lot of reasoning power to figure out what's going on."

53.    In 1976, Bhikhabhai Patel bought the first motel on Interstate owned by a

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

member of the Patel group.  The Patels emigrated from Gujarat in western India and some of the Patel members describe themselves as a bonded clan. In India, they are known as shrewd merchants and ambitious businesspeople that are stubbornly local to each other. Ramesh Patel, an owner of the Westerner motel, reported said "We help each other out. We make loans to each other with no paper and no signatures. . . . It works out fine—as long as it stays amongst Patels."

54.     The Patels have since purchased at least twenty (20) motels in the Portland area and several more throughout Oregon.  At all relevant times, Patels owned all but one motel along Interstate Avenue in Portland—one of the sex trafficking hot spots in Portland. Most of the Patels choose to live in, manage and own their own motels. The Portland Patels have a social club, the Gujarati Samaj where they socialize.  The Patel motel owners in Portland have known that sex trafficking is rampant at the subject motels at issue in this Complaint for long before Plaintiff was trafficked there and throughout her trafficking. When discussing the issue of forced prostitution and turning criminals away, one such owner reportedly said "to turn away any customer when you're talking about bread and butter isn't an easy thing to do."

**Plaintiff Is a Sex Trafficking Survivor That Was Physically and Psychologically Brutalized for Years and Trafficked for Sex at Hotels and Motels.**

55.     From 2016 through 2022, Plaintiff was trafficked for sex at the Portland Inn located at or about 405 N.E. Columbia Boulevard in Portland, Oregon 97211; the Palms Motel located at 3801 N. Interstate Avenue in Portland, Oregon, 97227; and the Union Avenue Motel located at 59 N.E. Gertz Road, Portland, Oregon, 97211 (together, "the Subject Motels").

56.     Plaintiff was treated like property and bought, sold and exchanged between traffickers.

57.     Plaintiff was brutally beat, raped, tortured, strangled, drugged and forced to

engage in commercial sex by criminal sex traffickers at the Subject Motels.

58.     Plaintiff was controlled by physical force and threats. She was controlled by guns, knives, assault rifles, mace, tasers, drugs and several objects. She was tased, hit, cut, strangled, stabbed, drugged and raped often.

59.     Plaintiff was raped by several men per day for the subject years.  Men raped her through penile and vagina penetration and sometimes tortured her by raping her with objects that caused excessive internal damage and harm.

60.     Plaintiff's teeth were knocked out.  Her face was often bloodied and battered. She was burned so severely that she still has non-healing wounds.

61.     Plaintiff's traffickers painfully tattooed her against her will for their entertainment.

62.     Plaintiff has reason to believe her traffickers killed people.  They were violent and carried and used guns. Her traffickers threatened to kill Plaintiff if she did not obey. She was often severely beat if she did not completely obey and comply, and sometimes for no apparent reason at all. The traffickers knew where her family resided and often threatened to kill them.

63.     One time when Plaintiff tried to escape, she was caught before she could and brutally beat and strangled until she passed out and urinated and defecated on herself. She nearly died. Her traffickers shot up her family's home.  She had witnessed several shoot outs and reasonably believed they would kill her family if she did escape.

64.     Plaintiff was never allowed to seek medical treatment. Her wounds would be burned and treated with over-the-counter items, and wrapped, only when necessary to keep her alive to continue making money for the traffickers.

65.     Plaintiff was often deprived of food and/or water.  She was often dehydrated. Plaintiff was often deprived of sleep for long periods of time.

66.     When Plaintiff was able to sleep, she had to try not to cry herself to sleep

because she would get beat if she cried.

67.     Plaintiff's criminal traffickers worked with the trafficker Defendants in this case to harbor, transport, keep, control, and traffic Plaintiff for sex in and out of motels. She was forced and coerced into having commercial sex for her traffickers', including Defendants', financial gain and benefit for years.

68.     Her traffickers would openly operate their trafficking venture at Defendants' motels and often trafficked other women and girls along with Plaintiff at each.

69.     Although some of Plaintiff's traffickers are deceased, others are still at large, and she lives in fear every single day that they will find her and take her life.

70.     When Defendants participated in trafficking Plaintiff, they caused unimaginable extreme physical pain and emotional distress. They broke Plaintiff to her core.  She has chronic physical pain. She is imprisoned in her mind because she cannot escape the horrific memories.  She suffers from severe PTSD and panic attacks.  She has trouble sleeping and experiences chronic nightmares. She experiences physiological bodily reactions to triggers daily.  She is fearful of people and places. She has unwanted tattoos and markings all over her body.  She is covered in scars.  Defendants were in the best position to be able to stop sex trafficking from happening at their motel.  Instead, they chose to facilitate it, to help Plaintiff's traffickers, and to knowingly profit from it.

**Defendant Portland Hospitality Investments, LLC Participated in a Sex Trafficking Venture that Involved Abusing and Trafficking Jane Doe by Forcing and Coercing Jane Doe to Engage in Commercial Sex for Its Benefit.**

71.     From 2017 through 2022, Plaintiff was subjected to sex trafficking at the Portland Inn located at or about 405 N.E. Columbia Boulevard in Portland, Oregon 97211.

72.     When Plaintiff's traffickers took Plaintiff to the Portland Inn, owned by the Portland Hospitality Investments, LLC (Portland Inn Owners), it was clear that the Portland Inn Owners were living at the property—or were there all the time. The Portland

Owners and its employees spoke with Plaintiff's traffickers by name and knew their street names.  Portland Inn Owners' managing agents and employees would accept drugs from the traffickers for rooms. Plaintiff directly witnessed the exchanges.

73.     The Portland Inn employees and Owners witnessed the following at the Portland Inn while Plaintiff was being trafficked there: (1) Plaintiff being controlled by her traffickers; (2) Plaintiff being hit and beat by her traffickers at the Portland Inn; (3) Plaintiff's traffickers selling drugs, Plaintiff and other women and girls at the Portland Inn; (4) money exchanges happening around the property at the Portland Inn; (5) foot traffic going into and out of the rooms where Plaintiff was kept at the Portland Inn daily; (6) loud screaming from Plaintiff and crying; (7) visible injuries on Plaintiff's face and body; (8) Plaintiff looking unhealthy and unhappy; (9) Plaintiff's traffickers discussing trafficking Plaintiff and other women and girls;

74.     Despite Defendant Portland Inn Owners witnessing and knowing the above red flags of Plaintiff being trafficked for sex at the Portland Inn, and knowing Plaintiff was indeed being forced to have commercial sex at their property, Defendant Portland Inn Owners chose not to report it to the police, city, county or state.  Defendant Portland Inn Owners chose to assist and aid the traffickers and harbor Plaintiff so as to traffic Plaintiff and participate in the trafficking of Plaintiff.

75.     During check ins and throughout the long stays, Plaintiff looked scared, timid, nervous, and sad. Her trafficker was always around controlling Plaintiff and other women and girls.

76.     One of Plaintiff's traffickers had sexual relations with an employee of the Portland Inn.  The on-site managing agents/owners of the Portland Inn had actual knowledge that Plaintiff's traffickers were abusing, controlling and trafficking Plaintiff at the Portland Inn because they saw all of the signs and red flags of sex trafficking, as well as had communications with the traffickers and victims about it.

77.    The Portland Inn was used by Plaintiff's traffickers for days and sometimes weeks at a time, encountering the same staff over and over again for years.

78.    During this time, Plaintiff was under the control of her traffickers and endured multiple beatings, threats, and mental manipulation. Plaintiff was physically abused often.

79.    Despite injuries and illness from the drugs they would stab and inject into her, Plaintiff's traffickers continued to force her to have commercial sex. Some of her wounds became infected, and she showed noticeable signs of pain.

80.    Plaintiff was burned multiple times leaving her with visible wounds and eventual scars.

81.    Plaintiff was consistently beaten by her traffickers, which would be loud events and regularly left visible bruises and marks on different parts of her body.

82.    Plaintiff witnessed other girls being beat and trafficked at the Portland Inn while she was regularly trafficked there.

83.    While staying at the subject Portland Inn, Plaintiff's trafficker would post advertisements online offering Plaintiff for commercial sex acts to occur at the motel and communicated with buyers responding to the advertisements. While staying at the subject Portland Inn, Plaintiff was forced to be raped for money numerous times per day at all hours of the day and night.

84.    With each stay at the subject Portland Inn, several consistent red flags were visible and audible to the hotel employees at each location, including but not limited to: paying for stays in drugs and cash; paying for extended stays on a day-to-day basis; requesting certain rooms away from guests; obvious signs of illegal drug use; frequent requests for clean linens or towels; unusually large numbers of used condoms in the trash; unusually large numbers of male visitors going in and out of Plaintiff's room at all times during the day and night; visible and audible signs of physical abuse; women and Plaintiff

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

wearing clothing inappropriate for the weather; loud noises of abuse and other violence audible to staff and other rooms; not providing proper identifications when it was asked for; sad and sick looking women and girls being escorted to and from the property; men with weapons; money exchanges in open areas around the property; and men lingering and watching.

85.    These red flags were open and obvious to anyone working at the subject Portland Inn, including Defendant Portland Inn owners.

**Portland Hospitality Investments, LLC Knew Plaintiff Was Being Trafficked for Sex at the Portland Inn and Knew They Were Benefitting from the Trafficking.**

86.    Portland Hospitality Investments, LLC, as well as its managers and employees, had both actual and constructive knowledge of the trafficking of Plaintiff at the subject Portland Inn because the trafficking was the direct result of the Portland Inn Owners' facilitation of Plaintiff's trafficking at the subject locations. The owners and managers lived on-site and saw and heard the sex trafficking occurring day in and day out. The owners and managers had conversations with the traffickers and victims about the commercial sex and witnessed the abuse and control.

87.    Due to all of the red flags of trafficking that were present as described herein, Portland Inn Owners knew and should have known that Plaintiff was being trafficked regularly at the subject Portland Inn. Defendant Portland Inn Owners also knew that sex trafficking had been occurring at the Portland Inn for many years before 2017 because they witnessed it and were notified about it.

88.    The Portland Inn Owners are responsible for the acts, omissions, and knowledge of all employees of the subject Portland Inn motel when operating the motel because these acts and omissions were committed in the course and scope of employment. Defendants ratified these acts and omissions because each failed to exercise reasonable

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

1  care in the hiring, training, supervision, and retention of these employees given the specific

2  risks known and reported to Defendants about sex trafficking occurring that the subject

3  Portland Inn.

4      89.    Despite having actual or constructive knowledge of widespread and ongoing

5  sex trafficking at the subject Portland Inn, including the trafficking of Plaintiff, the

6  Portland Inn Owners Defendants, Portland Hospitality Investments, LLC, and its

7  managers, continued renting rooms for profit to these traffickers, including the rooms used

8  to sexually exploit victims.

9      90.    Portland Hospitality Investments, LLC and their managers and employees

10  knew or were willfully blind to the fact that Plaintiff was being trafficked for sex at the

11  Portland Inn and, despite this, benefited from continued association with the traffickers

12  by providing them with a venue in the form of hotel rooms and related services, to harbor

13  and facilitate the sexual exploitation and trafficking of her and others.

14      91.    Portland Inn Owners and managers also facilitated widespread trafficking at

15  their motel locations, including the trafficking of Plaintiff in ways including:

16      a.  Allowing inappropriate and inadequate practices for hiring, training,

17          supervising, managing, retaining, and disciplining front line staff regarding

18          issues related to human and sex trafficking;

19      b.  Inadequate and inadequately enforced sex trafficking notice and training for

20          motel staff;

21      c.  Choosing not to report known or suspected criminal activity including sex

22          trafficking according to reasonable practices, industry standards, laws, and

23          claimed policies and procedures so as to support an environment without

24          accountability; and

25      d.  Implicitly encouraging the activities of traffickers by creating an environment

26          where they did not need to incur the burden of taking significant steps to conceal

their activities but, instead, could operate without concern for detection or interference by the motel staff and openly traffic women and children with the motel staff's assistance.

92.    As a direct and proximate result of these egregious practices on the part of the Portland Inn Owners and managers, Plaintiff and numerous other victims of sex trafficking and exploitation have been permanently injured and damaged physically, emotionally, psychologically, and financially.

93.    Portland Hospitality Investments, LLC Defendant's knowledge is not limited to a general awareness of the problem of sex trafficking in the hotel industry. Defendants have known, since well before Plaintiff was trafficked, that sex trafficking was ongoing and widespread at their properties, including the subject property.

94.    Portland Hospitality Investments, LLC knew they and their staff at the Portland Inn were facilitating sex traffickers and trafficking; and that Defendant was generating revenue through policies that encouraged sex traffickers to operate at their property, including but not limited to not implementing policies and procedures known to be necessary to stop known trafficking; not requiring identification cards or "IDs"; allowing daily payments of cash and/or drugs for extended stays; complying with requests for rooms to be rented away from other guests or in specific locations with easy access; allowing traffickers to escort bruised and battered women to rooms without IDs; allowing several buyers to come in and out of the rooms victims were trafficked in without ID; ignoring yelling and screaming from rooms where trafficking took place and in public areas around the property; ignoring obvious copious amounts of sex paraphernalia; not addressing the trafficking signs and reports of drugs, abuse and prostitution; forming relationships with traffickers and treating traffickers like "regulars" with benefits by accommodating specific requests that entail known signs of trafficking and not reporting the trafficking or taking any steps to prevent or stop it.

95.     Defendants have access to reviews left by guests on websites wherein guests frequently complain about the prevalence of obvious trafficking by way of men going in and out and forced prostitution, hearing physical violence by traffickers, and other signs of trafficking.

96.     Many online reviews from 2017 through 2022 state that the Portland Inn was unsafe, had homeless people wandering around the property, and had sketchy and scary looking people lurking around the property.  Reviews state that at the property (1) you can hear everything in rooms and that the walls are thin; (2) guests looks like they are residents and have been living or staying there for a long time; (3) there is blood all over the walls; (4) there was no security; (5) doors have been broken and kicked in; (6) there are needles were laying around the property; (7) tweakers and drug dealers were around the property; (8) security latches were broken; (9) "trapping" was going on; (10) call girls yelling all night; (11) drug deals going on all night; (12) sketchy and shady activity goes on here; (12) it was dangerous and unsafe; (13) violence went on; (14) drug paraphernalia was around the property; (15) the manager is a thug; (16) crack heads were everywhere and people were up and noisy all night; (17) knife holes in the doors; and (18) had an aggressive and violent manager.

97.     At relevant times, Portland Inn online reviews specifically warned and reported about "prostitutes" and "pimps beating their girlfriends."

98.     Information that has become public through news stories establishes the entrenched and pervasive nature of sex trafficking in the areas where the subject hotels are located, which has continued unabated for several years at the Portland Inn. The Portland Inn Owners have provided the means necessary for traffickers to traffic victims, including Plaintiff, for years.

99.     Other women and girls were being trafficked for sex at the same hotels at the same time as Plaintiff and many had been trafficked at the subject Portland Inn.

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

100.    Plaintiff's traffickers were often present with Plaintiff at check in and would linger around the motel or in the parking lot while Plaintiff was forced to have sex with several buyers daily at the Portland Inn. Plaintiff would look scared, timid, nervous, abused, battered and sad. This was all in plain sight of Defendant Portland Hospitality Investments, LLC's owners, managing agents, and employees at the subject location. Plaintiff's traffickers could be seen leaving the room when another male arrived and then returning as soon as that male left. This would happen multiple times a day for the extended periods of time Plaintiff was trafficked at the Portland Inn for years.

101.    There was heavy foot traffic in and out of the rooms where Plaintiff was being harbored at the Portland Inn. This foot traffic involved men who were not hotel guests. Several men came in and out of the subject motel rooms in a single day/night. These individuals were usually not guests, entered and left at unusual hours and were present at the hotel for brief periods of time. Their comings and goings were visible to motel employees that were located at the front desk and around the Portland Inn property. A reasonable motel would have seen these regular "red flag" interactions at their property in plain sight and Defendant Portland Inn Owners should have seen and did see it by and through their employees and agents.

102.    Obvious signs of trafficking consistent with sex trafficking, including well-known "red flags" for trafficking in a hotel, such as condoms, sex paraphernalia, foot traffic, loitering, lingering, money exchanges, abuse, excess bedding and towels, bloody bedding and towels, battered girls and women, and lingerie, existed while Plaintiff was being trafficked at the Portland Inn. These things were not only visible to but must have been seen by motel employees at the property, entering and cleaning the rooms, or even just collecting the trash, towels and linens.

103.    When forced and coerced into coming and going from the subject Portland Inn, Plaintiff looked unhealthy, unhappy, abused, and scared. Her traffickers were always

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

watching her, and her noticeable demeanor was visible to motel employees they passed by and that her trafficker consistently interacted with.

104.    At all relevant times, Portland Hospitality Investments, LLC knew that Plaintiff was being trafficked at the subject Portland Inn locations named herein. A jury will likely find that not only should Defendants' have known, but that they actually knew they were profiting from participating in the sex trafficking venture that was trafficking Plaintiff at all times she was being trafficked at their locations.

105.    Internet reviews for the subject Portland Inn location named herein, which were read, managed, controlled, and monitored by Portland Inn Owners show the pervasiveness of crime including sex trafficking before, during and after Plaintiff was trafficked there. This shows Portland Inn Owners knew and should have known that trafficking was going on and that Plaintiff was being trafficked there.

106.    Plaintiff's traffickers paid for stays in cash, oftentimes were not required to present ID, paid for extended stays on a day-to-day basis with drugs and/or cash, requested rooms away from other guests and/or the front desk, showed obvious signs of illegal drug use, carried guns, and were physically abusive at the property often.

107.    Portland Inn Owners Defendants are vicariously liable for the acts, omissions, and knowledge of their staff, employees, managers, and agents.

108.    Portland Hospitality Investments, LLC profited from the sex trafficking of Plaintiff when they rented rooms to Plaintiff's traffickers and her that they knew or should have known were being used for human trafficking, and specifically sex trafficking, before and at that time Plaintiff was being trafficked, and specifically that she was being trafficked and forced to engage in commercial sex.

109.    Portland Hospitality Investments, LLC benefited from the steady stream of income that Plaintiff's traffickers brought to their motel through room rentals and merchandise purchases.

110.    Portland Inn Owners profited from each and every room that Plaintiff's traffickers rented where Plaintiff was harbored, abused, drugged, beat, hit, raped and maintained at the Portland Inn for the purpose of sex trafficking.

111.    Portland Inn Owners facilitated the trafficking through its practices, policies, operations and procedures. They failed to take appropriate action to prevent the trafficking of individuals, including Plaintiff, for sex so they could continue to profit from the room rentals, and business that trafficking brings.  For trafficking to operate and be a successful business—the selling of women and children for sex—it must occur regularly and consistently at a place/property.  Here, the regular and consistent business of trafficking fed the subject Portland Inn business and profits and used the place and property such that the traffickers and Defendant traffickers had a symbiotic relationship.

112.    Portland Inn Owners owned and operated the subject Portland Inn motel while trafficking sellers reigned over the property and buyers paraded in and out of rooms rented for the purpose of trafficking Plaintiff. Their employees and agents observed and should have observed, and heard and should have heard, the buyers parading in and out of its hotel rooms to engage in the sex trafficking of Plaintiff. Their employees and agents observed and should have observed the trafficking occurring regularly and for weeks at a time, for years, at the subject Portland Inn but chose to look the other way and/or participated it in directly so they could profit.

113.    Plaintiff's trafficking at the subject Portland Inn was a result of Portland Inn Owners participating in a venture with Plaintiff's criminal individual traffickers. If Portland Inn Owners Defendants had not continued participating in a venture that they knew or should have known violated 18 U.S.C. §1591(a), they would not have received a benefit from Plaintiff's trafficking at the subject hotel location and they could have prevented serious and permanent injuries to Plaintiff and several other victims.

114.    Despite its actual and/or constructive knowledge that the venture it was

engaged in was in violation of 18 U.S.C. §§1591(a) and 1595(a) through the conduct of motel managing agents, owners and staff, and the widespread trafficking at the subject Portland Inn, Portland Hospitality Investments, LLC participated in the venture by continuing to operate the Portland Inn in a way that it knew or should have known would lead to further violations of 18 U.S.C. § 1591(a), including trafficking of Plaintiff and victims like Plaintiff.

115.    Portland Hospitality Investments, LLC and its managers, employees and agents participated in this sex trafficking venture through the conduct described herein as they were responsible for and had control over all operations at the subject Portland Inn.

116.    Defendant Portland Inn also facilitated widespread trafficking at their hotel locations, including the trafficking of Plaintiff in ways including: (1) allowing inappropriate and inadequate practices for hiring, training, supervising, managing and disciplining staff regarding issues related to human trafficking; 2) inadequate and inadequately enforced sex trafficking notice and training for staff; (3) choosing not to report known or suspected criminal activity including sex trafficking according to reasonable practices, industry standards, and laws; and (4) implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the hotel staff.

**Defendant Union Avenue LLC Participated in a Sex Trafficking Venture that Involved Abusing and Trafficking Jane Doe by Forcing and Coercing Jane Doe to Engage in Commercial Sex for Its Benefit.**

117.    From 2017 through 2022, Plaintiff was subjected to sex trafficking at the Union Avenue Motel located at or about 59 NE Gertz Rd Portland Oregon, 97210

118.    When Plaintiff's traffickers took Plaintiff to the Union Avenue Motel, owned by the Union Avenue LLC, it was clear that the Union Avenue LLC owners, officers, and/or

managing agents were living at the property and were there all the time. People were strung out and high on the property. The units were extremely down and people stayed there for long periods at a time. Plaintiff's traffickers took Plaintiff to the Union Avenue Motel regularly and sometimes for long periods of time. Union Avenue LLC and its employees spoke with Plaintiff's traffickers by name and knew their street names. Union Avenue LLC's managing agents and employees would accept stolen goods from the traffickers for rooms. Plaintiff directly witnessed the exchanges and/or was forced to engage.

119. The Union Avenue LLC's owners/manager was always on-site. A woman named "Angie" that represented herself as an owner/manager would accept jewelry, shoes and other items for rent sometimes when the trafficker didn't have the cash or didn't want to pay it. "Angie" allowed Plaintiff's traffickers to pay for the rooms late after he made cash from selling Plaintiff.

120. Traffickers paraded their victims around the Union Avenue Motel property and openly beat them. Police would be called by victims and traffickers and abusers would flee and return after the police left. The Union Avenue Motel owners and managers would not make the abusers and traffickers leave—they let them remain on the property and never reported them.

121. Plaintiff's traffickers would normally get two rooms at the Union Avenue Motel and the owners and managers knew that one was for the trafficker and the other was to sell women and girls.

122. The Union Avenue Motel employees and owners witnessed the following at the Union Avenue Motel while Plaintiff was being trafficked there: (1) Plaintiff being controlled by her traffickers; (2) Plaintiff being hit and beat by her traffickers; (3) Plaintiff's traffickers selling drugs, Plaintiff and other women and girls at the Union Avenue Motel; (4) money exchanges happening around the property at the Union Avenue

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

Motel; (5) foot traffic going into and out of the rooms where Plaintiff was kept at the Union Avenue Motel daily; (6) loud screaming from Plaintiff and crying; (7) visible injuries on Plaintiff's face and body; (8) Plaintiff looking unhealthy and unhappy; (9) Plaintiff's traffickers discussing trafficking Plaintiff and other women and girls; (10) drug dealing and women and girls being forcefully given drugs; (11) vicious fights and breaking of doors and furniture; (12) crime scenes and murders.

123.     Despite Defendant Union Avenue LLC witnessing and knowing the above red flags of Plaintiff being trafficked for sex at the Union Avenue Motel, and knowing Plaintiff was indeed being forced to have commercial sex at their property, Defendant Union Avenue LLC chose not to report it to law enforcement, Hospitality Associations, the City, the County, or the State.  Defendant Union Avenue LLC chose to assist and aid the traffickers and harbor Plaintiff so as to traffic Plaintiff and participate in the trafficking of Plaintiff.

124.     During check ins and throughout the long stays, Plaintiff looked scared, timid, nervous, and sad. Her trafficker was always around controlling Plaintiff and other women and girls.

125.     The on-site managing agents/owners of the Union Avenue Motel had actual knowledge that Plaintiff's traffickers were abusing, controlling and trafficking Plaintiff at the Union Avenue Motel because they saw all of the signs and red flags of sex trafficking, as well as had communications with the traffickers and victims about it.

126.     Drug use was allowed on the property. Addicts, as well as victims being forcefully drugged, were all around the property.  In 2015, public articles indicate that when firefighters went to the property to extinguish a major fire that damaged four rooms, they were walking on drug needles that were covering floors. The following day, the police went back to the Union Avenue Motel with a warrant and found, among other things, $8,000 worth of heroin, a handgun and over $3,500 in cash in one of the rooms.

127.    The Union Avenue Motel has been around for decades and was known for being the site where "A Drugstore Cowboy" was filmed.  The Motel has gone down hill consistently since and has been a crime scene since the 1980s.  It now looks like it should be condemned from the outside.

128.    The Union Avenue Motel was used by Plaintiff's traffickers weeks at a time, encountering the same staff over and over again for years.

129.    During this time, Plaintiff was under the control of her traffickers and endured multiple beatings, threats, and mental manipulation. Plaintiff was physically abused often.

130.    Despite injuries and illness from the drugs they would stab and inject into her, Plaintiff's traffickers continued to force her to have commercial sex. Some of her wounds became infected, and she showed noticeable signs of pain.

131.    Plaintiff was burned multiple times leaving her with visible wounds and eventual scars.  The Motel staff and owners could see the wounds.

132.    Plaintiff was consistently beaten by her traffickers, which would be loud events and regularly left visible bruises and marks on different parts of her body visible to Union Ave LLC employees, managers and agents.

133.    Plaintiff witnessed other girls being beat and trafficked at the Union Avenue Motel while she was regularly trafficked there.  She believes dead bodies were found there.

134.    While staying at the subject Union Avenue Motel, Plaintiff's trafficker would post advertisements online offering Plaintiff for commercial sex acts to occur at the motel and communicated with buyers responding to the advertisements. While staying at the subject Union Avenue Motel, Plaintiff was forced to be raped for money numerous times per day at all hours of the day and night.

135.    With each stay at the subject Union Avenue Motel, several consistent red

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

flags were visible and audible to the hotel employees at each location, including but not limited to: paying for stays in items that looked stolen and cash; paying for extended stays on a day-to-day basis; requesting certain rooms away from guests; obvious signs of illegal drug use and forced drug use; doors being knocked down and damaged; unusually large numbers of used condoms in the trash; unusually large numbers of male visitors going in and out of Plaintiff's room at all times during the day and night; visible and audible signs of physical abuse; women and girls screaming; women and Plaintiff wearing clothing inappropriate for the weather; loud noises of abuse and other violence audible to staff and other rooms; not providing proper identification when it was asked for; sad and sick looking women and girls being escorted to and from the property; men with weapons; money exchanges in open areas around the property; and men lingering and watching.

136.    These red flags were open and obvious to anyone working at the subject Union Avenue Motel, including Defendant Union Avenue LLC.

**Union Avenue LLC Knew Plaintiff Was Being Trafficked for Sex at the Union Avenue Motel and Knew They Were Benefitting from the Trafficking.**

137.    Union Avenue LLC, as well as its managers and employees, had both actual and constructive knowledge of the trafficking of Plaintiff at the subject Union Avenue Motel because the trafficking was the direct result of the Union Avenue LLC' facilitation of Plaintiff's trafficking at the subject locations. The owners and managers lived on-site and saw and heard the sex trafficking occurring day in and day out.  The owners and managers had conversations with the traffickers and victims about the commercial sex and witnessed the abuse and control.

138.    Due to all of the red flags of trafficking that were present as described herein, Union Avenue LLC knew and should have known that Plaintiff was being trafficked regularly at the subject Union Avenue Motel.  Defendant Union Avenue LLC also knew that sex trafficking had been occurring at the Union Avenue Motel for decades before 2017

because they witnessed it and were notified about it.

139.    Union Avenue LLC and its managers are responsible for the acts, omissions, and knowledge of all employees of the subject Union Avenue Motel when operating the motel because these acts and omissions were committed in the course and scope of employment. Defendants ratified these acts and omissions because each failed to exercise reasonable care in the hiring, training, supervision, and retention of these employees given the specific risks known and reported to Defendants about sex trafficking occurring that the subject Union Avenue Motel.

140.    Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the subject Union Avenue Motel, including the trafficking of Plaintiff, the Union Avenue LLC Defendants, Union Avenue LLC, and its managers, continued renting rooms for profit to these traffickers, including the rooms used to sexually exploit victims.

141.    Union Avenue LLC and their managers and employees knew or were willfully blind to the fact that Plaintiff was being trafficked for sex at the Union Avenue Motel and, despite this, benefited from continued association with the traffickers by providing them with a venue in the form of hotel rooms and related services, to harbor and facilitate the sexual exploitation and trafficking of Plaintiff and others.

142.    Union Avenue LLC and managers also facilitated widespread trafficking at their motel locations, including the trafficking of Plaintiff in ways including:

143.    Allowing inappropriate and inadequate practices for hiring, training, supervising, managing, retaining, and disciplining front line staff regarding issues related to human and sex trafficking;

144.    Inadequate and inadequately enforced sex trafficking notice and training for motel staff;

145.    Choosing not to report known or suspected criminal activity including sex

trafficking according to reasonable practices, industry standards, laws, and claimed policies and procedures so as to support an environment without accountability; and

146.    Implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the motel staff and openly traffic women and children with the motel staff's assistance.

147.    As a direct and proximate result of these egregious practices on the part of the Union Avenue LLC and its managers, Plaintiff and numerous other victims of sex trafficking and exploitation have been permanently injured and damaged physically, emotionally, psychologically, and financially.

148.    Union Avenue LLC Defendant's knowledge is not limited to a general awareness of the problem of sex trafficking in the hotel industry. Defendants have known, since well before Plaintiff was trafficked, that sex trafficking was ongoing and widespread at their properties, including the subject property.

149.    Union Avenue LLC knew they and their staff at the Union Avenue Motel were facilitating sex traffickers and trafficking; and that Defendant was generating revenue through policies that encouraged sex traffickers to operate at their property, including but not limited to not implementing policies and procedures known to be necessary to stop known trafficking; not requiring identification cards or "IDs"; allowing daily payments of cash and/or drugs for extended stays; complying with requests for rooms to be rented away from other guests or in specific locations with easy access; allowing traffickers to escort bruised and battered women to rooms without IDs; allowing several buyers to come in and out of the rooms victims were trafficked in without ID; ignoring yelling and screaming from rooms where trafficking took place and in public areas around the property; ignoring obvious copious amounts of sex paraphernalia; not addressing the trafficking signs and reports of drugs, abuse and prostitution; forming relationships with traffickers and

treating traffickers like "regulars" with benefits by accommodating specific requests that entail known signs of trafficking and not reporting the trafficking or taking any steps to prevent or stop it.

150.    Defendants have access to reviews left by guests on websites wherein guests frequently complain about the prevalence of obvious trafficking by way of forced prostitution, drugs, hearing physical violence, and other signs of trafficking.

151.    Many online reviews from 2017 through 2022 state that the Union Avenue Motel (1) was unsafe; (2) allowed people to pay after they made the money that day; (3) was scary; (4) allow you to pay cash; (5) varies prices depending on who you are; (6) door locks do not work; (7) locks are not changed; (8) doors will open if pushed hard; (9) was unsanitary; (10) had drug addicts and drug paraphernalia; (11)  had sketchy and scary looking people around the property.  Reviews state that at the property (1) you can hear everything in rooms; (2) guests looks like they are residents; (3) doors have been broken and kicked in; (4) there are needles were laying around the property; (5) tweakers and drug dealers were around the property; and (6) prostitution and sex was for sale.

152.    At relevant times, Union Avenue Motel online reviews specifically warned and reported about prostitution.

153.    Information that has become public through news stories establishes the entrenched and pervasive nature of sex trafficking in the areas where the subject hotels are located, which has continued unabated for several years at the Union Avenue Motel. Union Avenue LLC have provided the means necessary for traffickers to traffic victims, including Plaintiff, for years.

154.    Other women and girls were being trafficked for sex at the same hotels at the same time as Plaintiff and many had been trafficked at the subject Union Avenue Motel.

155.    Plaintiff's traffickers were present with Plaintiff at check in and would linger around the motel or in the parking lot while Plaintiff was forced to have sex with several

buyers daily at the Union Avenue Motel. Plaintiff would look scared, timid, nervous, abused, battered and sad. This was all in plain sight of Defendant Union Avenue LLC's owners, managing agents, and employees at the subject location. Plaintiff's traffickers could be seen leaving the room when another male arrived and then returning as soon as that male left. This would happen multiple times a day for the extended periods of time Plaintiff was trafficked at the Union Avenue Motel for years.

156.    There was heavy foot traffic in and out of the rooms where Plaintiff was being harbored at the Union Avenue Motel. This foot traffic involved men who were not hotel guests. Several men came in and out of the subject motel rooms in a single day/night. These individuals were usually not guests, entered and left at unusual hours and were present at the hotel for brief periods of time. Their comings and goings were visible to motel employees that were located at the front desk and around the Union Avenue Motel property. A reasonable motel would have seen these regular "red flag" interactions at their property in plain sight and Defendant Union Avenue LLC should have seen and did see it by and through their employees and agents.

157.    Obvious signs of trafficking consistent with sex trafficking, including well-known "red flags" for trafficking in a hotel, such as condoms, sex paraphernalia, foot traffic, loitering, lingering, money exchanges, abuse, excess bedding and towels, bloody bedding and towels, battered girls and women, and lingerie, existed while Plaintiff was being trafficked at the Union Avenue Motel. These things were not only visible to but must have been seen by motel managers and employees at the property, entering and cleaning the rooms, or even just collecting the trash, towels and linens.

158.    When forced and coerced into coming and going from the subject Union Avenue Motel, Plaintiff looked unhealthy, unhappy, abused, and scared. Her traffickers were always watching her, and her noticeable demeanor was visible to motel employees they passed by and that her trafficker consistently interacted with.

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

159. At all relevant times, Union Avenue LLC knew that Plaintiff was being trafficked at the subject Union Avenue Motel locations named herein. A jury will likely find that not only should Defendants' have known, but that they actually knew they were profiting from participating in the sex trafficking venture that was trafficking Plaintiff at all times she was being trafficked at their locations.

160. Internet reviews for the subject Union Avenue Motel location named herein, which were read, managed, controlled, and monitored by Union Avenue LLC show the pervasiveness of crime including sex trafficking before, during and after Plaintiff was trafficked there. This shows Union Avenue LLC knew and should have known that trafficking was going on and that Plaintiff was being trafficked there.

161. Plaintiff's traffickers paid for stays in cash, oftentimes were not required to present ID, paid for extended stays on a day-to-day basis with goods and/or cash, requested rooms away from other guests and/or the front desk, showed obvious signs of illegal drug use, carried guns, and were physically abusive at the property often.

162. Union Avenue LLC Defendants are vicariously liable for the acts, omissions, and knowledge of their staff, employees, managers, and agents.

163. Union Avenue LLC profited from the sex trafficking of Plaintiff when they rented rooms to Plaintiff's traffickers and her that they knew or should have known were being used for human trafficking, and specifically sex trafficking, before and at that time Plaintiff was being trafficked, and specifically that she was being trafficked and forced to engage in commercial sex.

164. Union Avenue LLC benefited from the steady stream of income that Plaintiff's traffickers brought to their motel through room rentals and merchandise purchases.

165. Union Avenue LLC profited from each and every room that Plaintiff's traffickers rented where Plaintiff was harbored, abused, drugged, beat, hit, raped and

maintained at the Union Avenue Motel for the purpose of sex trafficking.

166.    Union Avenue LLC facilitated the trafficking through its practices, policies, operations and procedures. They failed to take appropriate action to prevent the trafficking of individuals, including Plaintiff, for sex so they could continue to profit from the room rentals, and business that trafficking brings.  For trafficking to operate and be a successful business—the selling of women and children for sex—it must occur regularly and consistently at a <u>place/property</u>.  Here, the regular and consistent business of trafficking fed the subject Union Avenue Motel business and profits and used the place and property such that the traffickers and Defendant traffickers had a symbiotic relationship.

167.    Union Avenue LLC owned and operated the subject Union Avenue Motel while trafficking sellers reigned over the property and buyers paraded in and out of rooms rented for the purpose of trafficking Plaintiff. Their employees and agents observed and should have observed, and heard and should have heard, the buyers parading in and out of its hotel rooms to engage in the sex trafficking of Plaintiff. Their employees and agents observed and should have observed the trafficking occurring regularly and for weeks at a time, for years, at the subject Union Avenue Motel but chose to look the other way and/or participated it in directly so they could profit.

168.    Plaintiff's trafficking at the subject Union Avenue Motel was a result of Union Avenue LLC participating in a venture with Plaintiff's criminal individual traffickers. If Union Avenue LLC Defendants had not continued participating in a venture that they knew or should have known violated 18 U.S.C. §1591(a), they would not have received a benefit from Plaintiff's trafficking at the subject hotel location and they could have prevented serious and permanent injuries to Plaintiff and several other victims.

169.    Despite its actual and/or constructive knowledge that the venture it was engaged in was in violation of 18 U.S.C. §§1591(a) and 1595(a) through the conduct of

motel managing agents, owners and staff, and the widespread trafficking at the subject Union Avenue Motel, Union Avenue LLC participated in the venture by continuing to operate the Union Avenue Motel in a way that it knew or should have known would lead to further violations of 18 U.S.C. § 1591(a), including trafficking of Plaintiff and victims like Plaintiff.

170.    Union Avenue LLC and its managers, employees and agents participated in this sex trafficking venture through the conduct described herein as they were responsible for and had control over all operations at the subject Union Avenue Motel.

171.    Defendant Union Avenue Motel also facilitated widespread trafficking at their hotel locations, including the trafficking of Plaintiff in ways including: (1) allowing inappropriate and inadequate practices for hiring, training, supervising, managing and disciplining staff regarding issues related to human trafficking; 2) inadequate and inadequately enforced sex trafficking notice and training for staff; (3) choosing not to report known or suspected criminal activity including sex trafficking according to reasonable practices, industry standards, and laws; and (4) implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the hotel staff.

**Defendant Palms Motel Owners Participated in a Sex Trafficking Venture that Involved Abusing and Trafficking Jane Doe by Forcing and Coercing Jane Doe to Engage in Commercial Sex for Its Benefit.**

172.    From 2018 through about 2019, Plaintiff was trafficked for sex and forced to have commercial sex at the Palms Motel located at 3801 N. Interstate Avenue, Portland, Oregon 97227.

173.    At all relevant times, the Palms Motel was owned, operated and controlled by Nayna Patel, Bhanubhai B. Patel, Alkesh Patel, and Bindiya Patel (herein the "Palms

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

Motel Owners").

174.    When Plaintiff's traffickers took Plaintiff to the Palms Motel, owned by the Palms Motel Owners, it was clear that the Palms Motel Owners, officers, and/or managing agents were living at the property and were there all the time. People were scary, on drugs, and trafficking other women and girls at the property. The units were run down and people stayed there for long periods at a time. Plaintiff's traffickers took Plaintiff to the Palms Motel regularly. Palms Motel Owners and its employees spoke with Plaintiff's traffickers by name and knew their street names. Palms Motel Owners' managing agents and employees would accept payment the following day from the traffickers for rooms. They would allow traffickers to pay late or the next day because they knew the women and girls had to make money for the traffickers and rent.

175.    The Palms Motel Owners' owners/manager were always on-site and observed all red flags and signs of the trafficking of Plaintiff.

176.    Traffickers paraded their victims around the Palms Motel property and were not afraid to beat them loudly. Police would be called by victims and traffickers and abusers would flee and return after the police left. The Palms Motel owners and managers would not make the abusers and traffickers leave unless it was too loud for too long so as to attract police activity—they let them remain on the property and never reported them.

177.    Plaintiff's traffickers would normally get two rooms at the Palms Motel and the owners and managers knew that one was for the trafficker and the other was to sell women and girls.

178.    The Palms Motel employees and owners witnessed the following at the Palms Motel while Plaintiff was being trafficked there: (1) Plaintiff being controlled by her traffickers; (2) Plaintiff being hit and beat by her traffickers; (3) Plaintiff's traffickers selling drugs, Plaintiff and other women and girls at the Palms Motel; (4) money exchanges happening around the property at the Palms Motel; (5) foot traffic going into

and out of the rooms where Plaintiff was kept at the Palms Motel daily and nightly often; (6) loud screaming from Plaintiff and crying; (7) visible injuries on Plaintiff's face and body; (8) Plaintiff looking unhealthy and unhappy; (9) Plaintiff's traffickers discussing trafficking Plaintiff and other women and girls; (10) drug dealing and women and girls being forcefully given drugs; (11) vicious fights and breaking of doors and furniture; and (12) crime scenes.

179.    Despite Defendant Palms Motel Owners witnessing and knowing the above red flags of Plaintiff being trafficked for sex at the Palms Motel, and knowing Plaintiff was indeed being forced to have commercial sex at their property, Defendant Palms Motel Owners chose not to report it to law enforcement, Hospitality Associations, the City, the County, or the State.   Defendant Palms Motel Owners chose to assist and aid the traffickers and harbor Plaintiff so as to traffic Plaintiff and participate in the trafficking of Plaintiff.

180.    During check ins and throughout the long stays, Plaintiff looked scared, timid, nervous, and sad. Her traffickers were always around controlling Plaintiff and other women and girls.

181.    The on-site managing agents/owners of the Palms Motel had actual knowledge that Plaintiff's traffickers were abusing, controlling and trafficking Plaintiff at the Palms Motel because they saw all of the signs and red flags of sex trafficking, as well as had communications about it.

182.    Crime was allowed on the property. Addicts, homeless loiterers, as well as victims being forcefully drugged, were all around the property

183.    The Palms Motel has been around for decades and is famous for its neon sign that has been mostly unchanged. It has been owned by Patels for many years and was recently used for a homeless shelter but may now be on its way back to a motel.  In addition to the sign, it has become known for its shady residents and ownership that

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

allows shady activity to go on.

184.    The Palms Motel was used by Plaintiff's traffickers for several days and sometimes weeks at a time encountering the same staff over and over again for years.

185.    During this time, Plaintiff was under the control of her traffickers and endured multiple beatings, threats, and mental manipulation. Plaintiff was physically abused often.

186.    In or about 2012, a criminal trafficker that had used the Palms Motel to traffic a young girl was arrested and stood trial.  News outlets reported on the testimony.  It came out that the trafficker chose the Palms Motel as one of three motels to traffic his victim. Testimony also made clear that the Palms Motel owners and managers saw the red flags but did not do anything to help the victim. They allowed the trafficking at their property.  This trial and news story was known to Palms Motel Owners.

187.    Despite injuries and illness from the drugs they would stab and inject into her, Plaintiff's traffickers continued to force her to have commercial sex. Some of her wounds became infected, and she showed noticeable signs of pain that was visible to Palms Motel Owners.

188.    Plaintiff was burned multiple times leaving her with visible wounds and eventual scars.  The Motel staff and owners could see the wounds.

189.    Plaintiff was consistently beaten by her traffickers, which would be loud events and regularly left visible bruises and marks on different parts of her body visible to Palms Motel Owners employees, managers and agents.

190.    Plaintiff witnessed other girls being trafficked at the Palms Motel while she was regularly trafficked there.

191.    While staying at the subject Palms Motel, Plaintiff's traffickers would post advertisements online offering Plaintiff for commercial sex acts to occur at the motel and communicated with buyers responding to the advertisements. While staying at the subject

Palms Motel, Plaintiff was forced to be raped for money numerous times per day at all hours of the day and night.

192.    With each stay at the subject Palms Motel, several consistent red flags were visible and audible to the motel employees, including but not limited to: paying for stays in items that looked stolen and cash; paying for extended stays on a day-to-day basis or late; requesting certain rooms away from guests; obvious signs of illegal drug use and forced drug use; doors being knocked down and damaged; unusually large numbers of used condoms in the trash; unusually large numbers of male visitors going in and out of Plaintiff's room at all times during the day and night; visible and audible signs of physical abuse; women and girls screaming; women and Plaintiff wearing clothing inappropriate for the weather and consistent with lingerie; loud noises of abuse and other violence audible to staff and other rooms; not providing proper identification when it was asked for; sad and sick looking women and girls being escorted to and from the property; men with weapons; money exchanges in open areas around the property; and men lingering and watching.

193.    These red flags were open and obvious to anyone working at the subject Palms Motel, including Defendants Palms Motel Owners.

**Palms Motel Owners Knew Plaintiff Was Being Trafficked for Sex at the Palms Motel and Knew They Were Benefitting from the Trafficking.**

194.    Palms Motel Owners, as well as its managers and employees, had both actual and constructive knowledge of the trafficking of Plaintiff at the subject Palms Motel because the trafficking was the direct result of the Palms Motel Owners' facilitation of Plaintiff's trafficking at the subject locations. The owners and managers lived on-site and saw and heard the sex trafficking occurring day in and day out. The owners and managers had conversations with the traffickers and victims about the commercial sex and witnessed the abuse and control.

195.    Due to all of the red flags of trafficking that were present as described herein, Palms Motel Owners knew and should have known that Plaintiff was being trafficked regularly at the subject Palms Motel.  Defendant Palms Motel Owners also knew that sex trafficking had been occurring at the Palms Motel for decades before 2017 because they witnessed it and were notified about it.

196.    Palms Motel Owners and its managers are responsible for the acts, omissions, and knowledge of all employees of the subject Palms Motel when operating the motel because these acts and omissions were committed in the course and scope of employment. Defendants ratified these acts and omissions because each failed to exercise reasonable care in the hiring, training, supervision, and retention of these employees given the specific risks known and reported to Defendants about sex trafficking occurring that the subject Palms Motel.

197.    Despite having actual and constructive knowledge of widespread and ongoing sex trafficking at the subject Palms Motel, including the trafficking of Plaintiff, the Palms Motel Owners, and its managers, continued renting rooms for profit to these traffickers, including the rooms used to sexually exploit victims.

198.    Palms Motel Owners and their managers and employees knew or were willfully blind to the fact that Plaintiff was being trafficked for sex at the Palms Motel and, despite this, benefited from continued association with the traffickers by providing them with a venue in the form of hotel rooms and related services, to harbor and facilitate the sexual exploitation and trafficking of Plaintiff and others.

199.    Palms Motel Owners and managers also facilitated widespread trafficking at their motel locations, including the trafficking of Plaintiff in ways including:

200.    Allowing inappropriate and inadequate practices for hiring, training, supervising, managing, retaining, and disciplining front line staff regarding issues related to human and sex trafficking;

201.    Inadequate and inadequately enforced sex trafficking notice and training for motel staff;

202.    Choosing not to report known or suspected criminal activity including sex trafficking according to reasonable practices, industry standards, laws, and claimed policies and procedures so as to support an environment without accountability; and

203.    Implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the motel staff and openly traffic women and children with the motel staff's assistance.

204.    As a direct and proximate result of these egregious practices on the part of the Palms Motel Owners and its managers, Plaintiff and numerous other victims of sex trafficking and exploitation have been permanently injured and damaged physically, emotionally, psychologically, and financially.

205.    Palms Motel Owners Defendant's knowledge is not limited to a general awareness of the problem of sex trafficking in the hotel industry. Defendants have known, since well before Plaintiff was trafficked, that sex trafficking was ongoing and widespread at their properties, including the subject property.

206.    Palms Motel Owners knew they and their staff at the Palms Motel were facilitating sex traffickers and trafficking; and that Defendant was generating revenue through policies that encouraged sex traffickers to operate at their property, including but not limited to not implementing policies and procedures known to be necessary to stop known trafficking; not requiring identification cards or "IDs"; allowing daily payments of cash and/or drugs for extended stays; complying with requests for rooms to be rented away from other guests or in specific locations with easy access; allowing traffickers to escort bruised and battered women to rooms without IDs; allowing several buyers to come in and out of the rooms victims were trafficked in without ID; ignoring yelling and screaming

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

from rooms where trafficking took place and in public areas around the property; ignoring obvious copious amounts of sex paraphernalia; not addressing the trafficking signs and reports of drugs, abuse and prostitution; forming relationships with traffickers and treating traffickers like "regulars" with benefits by accommodating specific requests that entail known signs of trafficking and not reporting the trafficking or taking any steps to prevent or stop it.

207.    Defendants have access to reviews left by guests on websites wherein guests frequently complain about the prevalence of obvious trafficking by way of forced prostitution, drugs, hearing physical violence, and other signs of trafficking.

208.    Many online reviews from 2018 through 2019 state that the Palms Motel (1) was unsafe; (2) was scary; (4) allow you to pay cash; (5) doors, windows and other safety items were damaged; (6) was unsanitary; (7) had drug addicts and drug paraphernalia; and (8) had sketchy and scary looking people around the property.  Reviews state that at the property (1) you can hear everything in rooms; (2) guests looks like they are residents; (3) doors have been broken and kicked in; (4) there are needles were laying around the property; (5) tweakers and drug dealers were around the property; and (6) prostitution and sex was for sale.

209.    At relevant times, Palms Motel online reviews specifically warned and reported about prostitution. In 2019, a reviewer detailed their experience with the owner trying to scam them and others out of money.  She called the police and the police told her not to stay at the Palms Motel anymore—or the nearby motels— because they are known from prostitution and trafficking.

210.    Information that has become public through news stories establishes the entrenched and pervasive nature of sex trafficking in the areas where the subject hotels are located, which continued unabated for several years at the Palms Motel. Palms Motel Owners provided the means necessary for traffickers to traffic victims, including Plaintiff,

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

for years.

211.    Other women and girls were being trafficked for sex at the same hotels at the same time as Plaintiff and many had been trafficked at the subject Palms Motel.

212.    Plaintiff's traffickers were present with Plaintiff at check in and would linger around the motel or in the parking lot while Plaintiff was forced to have sex with several buyers daily at the Palms Motel. Plaintiff would look scared, timid, nervous, abused, battered and sad. This was all in plain sight of Defendant Palms Motel Owners's owners, managing agents, and employees at the subject location. Plaintiff's traffickers could be seen leaving the room when another male arrived and then returning as soon as that male left. This would happen multiple times a day while Plaintiff was trafficked at the Palms Motel for years.

213.    There was heavy foot traffic in and out of the rooms where Plaintiff was being harbored at the Palms Motel. This foot traffic involved men who were not hotel guests. Several men came in and out of the subject motel rooms in a single day/night. These individuals were usually not guests, entered and left at unusual hours and were present at the hotel for brief periods of time. Their comings and goings were visible to motel employees that were located at the front desk and around the Palms Motel property. A reasonable motel would have seen these regular "red flag" interactions at their property in plain sight and Defendant Palms Motel Owners should have seen and did see it by and through their employees and agents.

214.    Obvious signs of trafficking consistent with sex trafficking, including well-known "red flags" for trafficking in a hotel, such as condoms, sex paraphernalia, foot traffic, loitering, lingering, money exchanges, abuse, excess bedding and towels, bloody bedding and towels, battered girls and women, and lingerie, existed while Plaintiff was being trafficked at the Palms Motel. These things were not only visible to but must have been seen by motel managers and employees at the property, the front desk manager

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

and/or owners, those entering and cleaning the rooms, or even staff just collecting the trash, towels and linens.

215.    When forced and coerced into coming and going from the subject Palms Motel, Plaintiff looked unhealthy, unhappy, abused, and scared. Her traffickers were always watching her, and her noticeable demeanor was visible to motel employees they passed by and that her trafficker consistently interacted with.

216.    At all relevant times, Palms Motel Owners knew that Plaintiff was being trafficked at the subject Palms Motel locations named herein. A jury will likely find that not only should Defendants' have known, but that they actually knew they were profiting from participating in the sex trafficking venture that was trafficking Plaintiff at all times she was being trafficked at their locations.

217.    Internet reviews for the subject Palms Motel location named herein, which were read, managed, controlled, and monitored by Palms Motel Owners show the pervasiveness of crime associated with and including sex trafficking before, during and after Plaintiff was trafficked there. This shows Palms Motel Owners knew and should have known that trafficking was going on and that Plaintiff was being trafficked there.

218.    Plaintiff's traffickers paid for stays in cash, oftentimes were not required to present ID, paid for extended stays on a day-to-day basis with goods and/or cash, requested rooms away from other guests and/or the front desk, showed obvious signs of illegal drug use, carried guns, and were physically abusive at the property often.

219.    Palms Motel Owners Defendants are vicariously liable for the acts, omissions, and knowledge of their staff, employees, managers, and agents.

220.    Palms Motel Owners profited from the sex trafficking of Plaintiff when they rented rooms to Plaintiff's traffickers and her that they knew or should have known were being used for human trafficking, and specifically sex trafficking, before and at that time Plaintiff was being trafficked, and specifically that she was being trafficked and forced to

engage in commercial sex.

221.    Palms Motel Owners benefited from the steady stream of income that Plaintiff's traffickers brought to their motel through room rentals and merchandise purchases.

222.    Palms Motel Owners profited from each and every room that Plaintiff's traffickers rented where Plaintiff was harbored, abused, drugged, beat, hit, raped and maintained at the Palms Motel for the purpose of sex trafficking.

223.    Palms Motel Owners facilitated the trafficking through its practices, policies, operations and procedures. They failed to take appropriate action to prevent the trafficking of individuals, including Plaintiff, for sex so they could continue to profit from the room rentals, and business that trafficking brings.  For trafficking to operate and be a successful business—the selling of women and children for sex—it must occur regularly and consistently at a place/property.  Here, the regular and consistent business of trafficking fed the subject Palms Motel business and profits and used the place and property such that the traffickers and Defendant traffickers had a symbiotic relationship.

224.    Palms Motel Owners owned and operated the subject Palms Motel while trafficking sellers reigned over the property and buyers paraded in and out of rooms rented for the purpose of trafficking Plaintiff. Their employees and agents observed and should have observed, and heard and should have heard, the buyers parading in and out of its hotel rooms to engage in the sex trafficking of Plaintiff. Their employees and agents observed and should have observed the trafficking occurring regularly and for weeks at a time, for years, at the subject Palms Motel but chose to look the other way and/or participated it in directly so they could profit.

225.    Plaintiff's trafficking at the subject Palms Motel was a result of Palms Motel Owners participating in a venture with Plaintiff's criminal individual traffickers. If Palms Motel Owners Defendants had not continued participating in a venture that they knew or

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

should have known violated 18 U.S.C. §1591(a), they would not have received a benefit from Plaintiff's trafficking at the subject hotel location and they could have prevented serious and permanent injuries to Plaintiff and several other victims.

226.    Despite its actual and/or constructive knowledge that the venture it was engaged in was in violation of 18 U.S.C. §§1591(a) and 1595(a) through the conduct of motel managing agents, owners and staff, and the widespread trafficking at the subject Palms Motel, Palms Motel Owners participated in the venture by continuing to operate the Palms Motel in a way that it knew or should have known would lead to further violations of 18 U.S.C. § 1591(a), including trafficking of Plaintiff and victims like Plaintiff.

227.    Palms Motel Owners and its managers, employees and agents participated in this sex trafficking venture through the conduct described herein as they were responsible for and had control over all operations at the subject Palms Motel.

228.    Defendant Palms Motel also facilitated widespread trafficking at their hotel locations, including the trafficking of Plaintiff in ways including: (1) allowing inappropriate and inadequate practices for hiring, training, supervising, managing and disciplining staff regarding issues related to human trafficking; 2) inadequate and inadequately enforced sex trafficking notice and training for staff; (3) choosing not to report known or suspected criminal activity including sex trafficking according to reasonable practices, industry standards, and laws; and (4) implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the hotel staff.

## Defendants are Jointly and Severally Liable for Plaintiffs' Damages

229.    Jane Doe was trafficked and regularly subjected to heinous abuse at each of the subject motel locations. She was regularly rotated between the above locations and

tortured for several days and weeks on end at each. She was raped and sexually assaulted repeatedly by countless men that paid her traffickers money to do so. However, her traffickers were not the only ones profiting from her relentless abuse. Defendants profited every night that Jane Doe was held against her will through force, fraud, and coercion at these properties through the rooms her traffickers booked and the goods that they purchased. Defendants' actions meet the definition of sex trafficking under federal law.

230.    For years, Jane Doe was subjected to the unimaginable horrors of human sex trafficking within rooms controlled, advertised, branded, supervised, inspected, owned fully or in part, and rented out by Defendants.

231.    Trapped in a cycle of exploitation and abuse, Jane Doe endured repeated sexual assaults, physical violence, physical injuries, psychological manipulation, torture, and dehumanizing treatment at the hands of her traffickers and the motels and its staff, including Defendants, that enabled her trafficking to continue within their motels. Jane Doe's daily existence was a living nightmare, filled with constant fear, pain, and humiliation. She was treated not as a human being with dignity and self-worth, but rather as an object to be sold and violated for monetary gain. As such, Jane Doe has suffered catastrophic noneconomic damages from this trauma that she will have to live with for the rest of her life, and which will total more than fifty (50) million dollars.

232.    Jane Doe has been robbed of the ability to ever lead a normal life. She is now and will always be plagued by nightmares, fears, uncontrollable triggers, subconscious and conscious reactions to triggers, anxiety, lack of optimism, stress, low self-esteem, low self-worth, insecurities, embarrassment, humiliation, sadness, scars, deformity, non-healing wounds and lack of confidence. She will never be the person she was before. She is stuck with the physical, psychological, and deformities for life. She will never be able to erase what happened to her.

233.    The venture or ventures in which each Defendant participated were direct,

1  legal, producing, and proximate causes of the injuries and damages to Plaintiff described
2  herein.

3      234.    Under the TVPRA, Defendants are jointly and severally liable for all damages
4  that a jury awards to Plaintiff for past and future losses she suffered as a proximate result
5  of the sexual exploitation and trafficking.

6                    **CAUSES OF ACTION AGAINST DEFENDANTS**

7                    **Sex Trafficking Under 18 U.S.C. § 1595.**
   **1.  Cause of Action: Perpetrator liability under 18 U.S.C §1595(a) based on**
8      **violation of 18 U.S.C §1591(a) (Against All Defendants)**

9

10     235.    Plaintiff realleges and incorporates the allegations in paragraphs 1 through
   234.

11     236.    Plaintiff is a victim of sex trafficking within the meaning of §1591 and 1595(a)
12  and is thus entitled to bring a civil action under 18 U.S.C §1595(a) against the
13  "perpetrator" of any violation of the TVPRA.

14     237.    Defendants, and each of them, are perpetrators within the meaning of 18
15  U.S.C §1595(a) because they:

16          a.  Violated 18 U.S.C §1591(a)(1) when, through the acts and omissions
17              described throughout this Complaint, they harbored and maintained
18              individuals, including Plaintiff, knowing or in reckless disregard of the
19              fact that the victims would be caused, through force, coercion, or fraud, to
20              engage in commercial sex acts while at its respective motel property; and

21          b.  Violated 18 U.S.C §1591(a)(2) when, through the acts and omissions
22              described throughout this Complaint, it knowingly received financial
23              benefit by knowingly assisting, supporting, or facilitating a venture that
24              was engaged in violations under 18 U.S.C §1591(a)(1) at its respective
25              motel properties.
26

---

50

238.    Violations of 18 U.S.C §1595(a) by each of the Defendants as "perpetrators" operated jointly with other unlawful acts and omissions alleged in this Complaint, to cause Plaintiff to suffer substantial physical and psychological injuries and all other damages described herein as a direct and proximate result of being trafficked and sexually exploited at the Defendants' hotel properties.

**2. Cause of Action: Beneficiary Liability under §1595 (a) of the TVPRA (All Defendants).**

239.    Plaintiff realleges and incorporates the allegations in Paragraphs 1 through 238.

240.    Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C §§ 1591 and 1595(a) and is thus entitled to bring a civil action under the "beneficiary" theory in 18 U.S.C §1595(a) against anyone who knowingly benefited from participation in a venture that the person knew or should have, with reasonable diligence, known was engaged in a violation of the TVPRA.

241.    Through acts and omissions described throughout this Complaint, Defendants received a financial benefit from participating in a venture with each other and traffickers, including Plaintiff's traffickers, despite the fact that each defendant knew or should have known that these traffickers were engaged in violations of 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2) at Defendants' properties, including the subject locations alleged in this Complaint. As more specifically alleged above, Defendants took part in a common undertaking and enterprise involving risk and potential profits, and here, actual profits resulted.  Defendants' owners, managers and employees had a direct association with the traffickers and knowingly facilitated the traffickers, which, as shown more thoroughly in the incorporated allegations above, showed a continuous business relationship between the traffickers and Defendants such that the pattern of conduct appears to be a tacit agreement between them. Thus, Defendants are liable as a beneficiary

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

under 18 U.S.C §1595(a).

242.    Through the acts and omissions described throughout this Complaint, Defendants received a financial benefit from participating in a venture with each other and Plaintiff's traffickers in the operations of their respective hotel properties even though Defendants knew or should have known that this venture was violating 18 U.S.C §§ 1591(a) and 1595(a).

243.    Violations of 18 U.S.C §1595(a) by Defendants as "beneficiaries" operated jointly with other unlawful acts and omissions alleged in this Complaint, to cause Plaintiff to suffer substantial physical and psychological injuries and all other damages alleged herein because of being trafficked and sexually exploited at the Defendants' motel properties.

## **JOINT AND SEVERAL LIABILITY**

244.    Plaintiff realleges and incorporates the allegations in Paragraphs 1 through 243.

245.    "Joint and several liability 'applies when there has been a judgment against multiple defendants.'"[6] If two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff recovers only once for the full amount.[7]

246.    Federal law allows an injured party to sue a tortfeasor for the full amount of damages for an indivisible injury that the tortfeasor's negligence was a substantial factor in causing, without regard to his proportion of fault and even if the concurrent negligence of others contributed to the incident.[8]

---

[6] *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 220–21 (1994).
[7] See 735 ILCS 5/2-1117; see Restatement (Second) of Torts § 875 (1977); *Honeycutt v. United States*, 137 S. Ct. 1626 (2017).
[8] *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256 (1979) (citations omitted); *Manganiello v. City of New York*, No. 07 Civ. 3644, 2008 WL 2358922 (S.D.N.Y. June 10, 2008), affirmed, 612 F.3d 149 (2nd Cir. 2010).

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

247.     Plaintiff alleges each Defendant should be held joint and severally liable to Plaintiff for the totality of her injuries and damages alleged herein.

## DAMAGES

248.     Defendants' wrongful acts and omissions described above, individually and collectively, caused Plaintiff to sustain legal damages.

249.     Plaintiff did suffer the following injuries as a direct and proximate result of Defendants, and each of their, wrongful actions and inactions alleged herein, and as such Plaintiff is entitled to be compensated for past and future personal injuries, non-economic damages, and economic damages, see, e.g., 18 U.S.C. §§ 1593, 1595, including:

     a.  actual damages;

     b.  direct damages;

     c.  incidental and consequential damages;

     d.  lost earnings and earning capacity;

     e.  necessary medical expenses;

     f.  life care expenses;

     g.  physical pain and suffering;

     h.  physical impairment;

     i.  mental anguish and emotional distress damages (until trial and in the future);

     j.  restitution;

     k.  unjust enrichment; and

     l.  disgorgement of profits.

250.     Plaintiff is entitled to pre-judgement and post-judgment interest at the maximum legal rates.

## PUNITIVE DAMAGES

251.     Plaintiff is entitled to punitive damages under the applicable statutes against

Defendants, and each of them, for each and every cause of action alleged herein, as a result of Defendants' outrageous, wanton, willful, and malicious conduct underlying Plaintiff's claims. See *Ditullio v. Boehm*, 662 F.3d 1091 (9th Cir. 2011).

## ATTORNEY FEES

252.    Plaintiff is entitled to recover her costs and reasonable, necessary, or customary attorneys' fees from Defendants under the applicable statutes. See 18 U.S.C. § 1595(a).

253.    All conditions precedent to Plaintiff's recovery of its costs and attorney's fees have occurred or will occur prior to entry of judgment in this suit.

## JURY DEMAND

254.    Plaintiff requests a jury trial in this action.

## PRAYER

255.    For these reasons, Plaintiff prays that this case be set for trial before a jury, and that upon a final hearing of the cause, judgment be entered for Plaintiff against Defendants jointly and severally, for:

        a.  all economic damages to which she is entitled;

        b.  all actual damages to which she is entitled;

        c.  all incidental and consequential damages to which she is entitled;

        d.  all mental anguish and emotional distress damages to which she is entitled;

        e.  all non-economic pain and suffering damages to which she is entitled;

        f.  all restitution damages to which she is entitled;

        g.  all disgorgement of profits to which she is entitled;

        h.  all unjust enrichment damages to which she is entitled;

        i.  exemplary, treble, and/or punitive damages;

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

1         j.   attorneys' fees and costs of suit;

2         k.  pre-judgment and post-judgment interest at the highest rate allowed

3           by law; and

4         l.   all other relief to which she is or may be entitled in law or in equity.

5                               SINGLETON SCHREIBER, LLP

6

7   Dated: July 16, 2025              By:    <u>/s/ Gerald Singleton</u>

8                                   Gerald Singleton (OSB 210955)
                                   Meagan Verschueren (CA 313117)

9                                   *Pro Hac Vice applicant*
                                   Katie Llamas (CA 303983)

10                                  *Pro Hac Vice applicant*
                                   Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26