IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JANE DOE, an individual,

        Plaintiff,

    v.

PORTLAND HOSPITALITY
INVESTMENTS, LLC; UNION
AVENUE, LLC; NAYNA PATEL,
an individual; BHANUBHAI B.
PATEL, an individual; ALKESH
PATEL; BINDIYA PATEL;
MARUTI, LLC; and DOES 1–100,

        Defendants.

Case No. 3:25-cv-01260-AB

OPINION & ORDER

Gerald Singleton
Katie Suzanne Llamas
Meagan Lynn Verschueren
Singleton Schreiber, LLP
591 Camino de la Reina, Suite 1025
San Diego, CA 92106

     Attorneys for Plaintiff

1 – OPINION & ORDER

Makenzie Kaiser
Mark Joseph Firmin, Jr.
Peder A. Rigsby
Stacey Darling
George S. Pitcher
Wilson Elser Moskowitz Edelman & Dicker LLP
805 SW Broadway, Suite 2460
Portland, OR 97205

      Attorneys for Defendant Portland Hospitality Investments, LLC

Edward Erling Hanna
Kurt Peterson
Williams Kastner
805 SW Broadway, Suite 2440
Portland, OR 97205

      Attorneys for Defendants Nayna Patel, Bhanubhai B. Patel, and Maruti LLC

Nicole M. Rhoades
Viet H. Tran
Brandon W. Stuber
Davis Rothwell Earle & Xochihua, PC
200 SW Market St., Suite 1800
Portland, OR 97201-5745

      Attorneys for Defendants Alkesh Patel and Bindiya Patel

**BAGGIO, District Judge:**

Plaintiff Jane Doe brings this case against Defendants Portland Hospitality Investments, LLC ("Portland Hospitality"), Union Avenue, LLC ("Union Avenue"), Maruti LLC ("Maruti"), Nayna Patel, Bhanubhai Patel, Alkesh Patel, and Bindiya Patel for "harms [Plaintiff] suffered as a result of being sex trafficked and sold for sex at hotels owned, operated, managed, and controlled by Defendants and their employees." First Am. Compl. ("FAC") ¶ 6, ECF No. 27. Plaintiff brings two claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595. *Id.* ¶¶ 235–43. Defendants Maruti, Nayna Patel, and Bhanubhai Patel (the "Maruti Defendants") move to dismiss Plaintiff's claims against them under Federal

2 – OPINION & ORDER

Rule of Civil Procedure 12(b)(6) or, alternatively, to strike certain allegations under Rule 12(f). Maruti Defs.' Mot. Dismiss ("Defs.' Mot."), ECF No. 29. Defendants Alkesh Patel, Bindiya Patel (the "Patel Defendants"), and Defendant Portland Hospitality move to join in the pending motion.[1] Patel Defs.' Mot. Joinder, ECF No. 31; Def. Portland Hospitality's Mot. Joinder, ECF No. 30. The Court treats the Maruti Defendants' pending Motion to Dismiss or Strike as a Joint Motion to Dismiss or Strike. Plaintiff also moves to proceed under a pseudonym. Pl.'s Mot. Proceed Pseudonym ("Pl.'s Mot."), ECF No. 41. Defendants do not oppose Plaintiff's Motion. Defs.' Resp. Pl.'s Mot. ("Defs.' Resp."), ECF No. 43. For the reasons below, the Court denies Defendants' Motion and grants Plaintiff's Motion.

## BACKGROUND

Plaintiff is a survivor of sex trafficking. FAC ¶ 7. From 2016 to 2022,[2] "she was harbored, beat, tortured and forced to engage in commercial sex acts for the benefit of her traffickers and Defendants at properties owned and controlled by Defendants in this case." *Id.* The properties in question are the Portland Inn in Northeast Portland, which Plaintiff alleges is owned and operated by Defendant Portland Hospitality, and the Palms Motel in North Portland,

---

[1] The term "Defendants" refers to all Defendants except Defendant Union Avenue. Defendant Union Avenue is an unrepresented party and therefore cannot participate in the pending motion. *See D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 974 (9th Cir. 2004) (holding that a corporation may not proceed without representation). Thus, the Court does not address the sufficiency of Plaintiff's allegations against Defendant Union Avenue.

[2] Elsewhere, Plaintiff alleges that the relevant timeframe was between 2017 and 2022. *See* FAC ¶ 25.

3 – OPINION & ORDER

which Plaintiff alleges is owned, operated, or managed by the Maruti Defendants and the Patel Defendants[3] (the "Subject Motels").[4] *Id.* ¶¶ 8, 10–14.

Plaintiff alleges she "was treated like property and bought, sold and exchanged between traffickers." *Id.* ¶ 56.  She "was controlled by physical force and threats[,]" "by guns, knives, assault rifles, mace, tasers, drugs and several objects[,]" and "was tased, hit, cut, strangled, stabbed, drugged and raped often." *Id.* ¶ 58. Her "teeth were knocked out[,] [h]er face was often bloodied and battered[,]" and "[s]he was burned so severely that she still has non-healing wounds." *Id.* ¶ 60. Plaintiff alleges that she "was often severely beat if she did not completely obey and comply," *id.* ¶ 62, and was once "beat and strangled until she passed out and urinated and defecated on herself" after trying to escape from her traffickers, *id.* ¶ 63. At other times, her traffickers would beat her "for no apparent reason at all." *Id.* ¶ 62.

Plaintiff specifically alleges that she "was brutally beat, raped, tortured, strangled, drugged and forced to engage in commercial sex by criminal sex traffickers at the Subject Motels." *Id.* ¶ 57. Plaintiff alleges that her traffickers sold her for sex at the Portland Inn from 2017 to 2022, *id.* ¶ 71, and at the Palms Motel from 2018 to about 2019, *id.* ¶ 172. While at the Subject Motels, Plaintiff's traffickers "would post advertisements online offering Plaintiff for commercial sex acts to occur at the [Subject Motels] and communicate[] with buyers responding to the advertisements." *Id.* ¶¶ 83, 191. Plaintiff would then be "forced to have sex with several

---

[3] The Patel Defendants argue that they "sold their interest in [the Palms Motel] years before the alleged trafficking took place and ceased all involvement with it." Patel Defs.' Mot. Joinder 2. But at this stage of the litigation, the Court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

[4] The term "Subject Motels" does not include the Union Avenue Motel because, as mentioned above, Defendant Union Avenue is unrepresented and cannot participate in the other Defendants' pending Motion.

4 – OPINION & ORDER

buyers daily at the [Subject Motels]." *Id.* ¶¶ 100, 212. Plaintiff alleges that this pattern of trafficking occurred "regularly and for weeks at a time, for years, at the [Subject Motels] . . . ." *Id.* ¶¶ 112, 224.

Plaintiff alleges that many signs of her trafficking occurred in "plain sight" of Defendants' "owners, managing agents, and employees . . . ." *Id.* ¶¶ 100–01, 212–13. For example, Plaintiff alleges that she had "visible injuries on [her] face and body" and was "hit and beat by her traffickers" in ways that Defendants' "employees and owners witnessed" at the Subject Motels. *Id.* ¶¶ 73, 178. Plaintiff alleges that she would scream and cry and that Defendants witnessed it. *Id.* ¶¶ 73, 178. Whenever such beatings did not happen in plain sight, Plaintiff alleges that her beatings "would be loud events" and were "audible to staff and other rooms . . . ." *Id.* ¶¶ 81, 84, 189, 192. While Plaintiff was trafficked at the Subject Motels, Plaintiff alleges that the Subject Motels' staff would see "unusually large numbers of used condoms in the trash[,]" *id.* ¶¶ 84, 192, "obvious copious amounts of sex paraphernalia[,]" *id.* ¶¶ 94, 206, and "bloody bedding and towels," *id.* ¶¶ 102, 214. Plaintiff also alleges that Defendants would see "foot traffic" and "large numbers of male visitors" in and around motel rooms where traffickers kept Plaintiff. *Id.* ¶¶ 73, 84, 178, 192. Plaintiff alleges that these signs were visible while she was located at the Subject Motels, *id.* ¶¶ 73, 178, but also specifically when she was present while checking in to her rooms, *id.* ¶¶ 75, 100, 180, 212. In addition to witnessing Plaintiff at the Subject Motels, Plaintiff further alleges that Defendants witnessed the presence of her traffickers, who were "always around controlling Plaintiff . . . ." *Id.* ¶¶ 75, 180. Over the course of her stays at the Subject Motels, Plaintiff alleges "encountering the same staff over and over again for years." *Id.* ¶¶ 77, 184. Finally, Plaintiff alleges that because the owners and

5 – OPINION & ORDER

managers of the Subject Motels "lived on-site[,]" they "saw and heard the sex trafficking occurring day in and day out." *Id.* ¶¶ 86, 194.

Plaintiff further alleges that Defendants facilitated the traffickers' sale of Plaintiff for sex at the Subject Motels. *Id.* ¶¶ 116, 228. Plaintiff specifically alleges that Defendants' cooperation with her traffickers was evident in the following ways: accepting cash or items (such as drugs or items that "looked stolen") in exchange for rooms, *id.* ¶¶ 106, 192; allowing "extended stays on a day-to-day basis[,]" *id.* ¶¶ 106, 218; accommodating the traffickers' special requests, such as placing the traffickers and Plaintiff in rooms located away from other guests or in specific locations with easy access, *id.* ¶¶ 94, 206; and not requiring identification when renting rooms, *id.* Over the course of Plaintiff's traffickers' dealings with Defendants, Plaintiff alleges that Defendants and their employees "spoke with Plaintiff's traffickers by name and knew their street names." *Id.* ¶¶ 72, 174. Specifically, as to Defendant Portland Hospitality, Plaintiff alleges that "[o]ne of Plaintiff's traffickers had sexual relations with an employee of the Portland Inn." *Id.* ¶ 76. And as to the Maruti and Patel Defendants, Plaintiff alleges that the Palms Motel "allow[ed] traffickers to pay late or the next day because they knew the women and girls had to make money for the traffickers and rent." *Id.* ¶ 174.

## STANDARDS

**I.      Rule 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson*, 668 F.3d at 1140.

6 – OPINION & ORDER

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct . . . ." *Id*. at 679. A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II.    Rule 12(f)

Courts may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). But courts must be sure not to "resolve disputed and substantial factual or legal issues in deciding a motion to strike." *Id.* (citation modified). Unlike a Rule 12(b)(6) motion to dismiss, a Rule 12(f) motion does not test the sufficiency of the complaint. *Id.* at 974.

Courts view Rule 12(f) motions with disfavor and infrequently grant them. *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 561 F. Supp. 2d 1187, 1189 (D. Or. 2008). Rule 12(f) motions are disfavored because "[t]here is a judicial preference for deciding matters

7 – OPINION & ORDER

on their merits when possible." *City of Portland v. Iheanacho*, No. 3:17-cv-0401-AC, 2018 WL 1426564, at *2 (D. Or. Mar. 22, 2018) (citing *Patapoff v. Vollstedt's, Inc.*, 267 F.2d 863, 865 (9th Cir. 1959)). "Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike." *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007).

## DISCUSSION

Defendants first argue that Plaintiff's FAC should be dismissed under Rule 12(b)(6) because Plaintiff fails to allege facts necessary to state a claim under the TVPRA. Defs.' Mot. 11–21. Alternatively, Defendants argue that the Court should strike portions of Plaintiff's FAC under Rule 12(f). *Id.* at 21–26. Plaintiff also moves to proceed under a pseudonym. *See generally* Pl.'s Mot. For the reasons that follow, the Court denies Defendants' Motion to Dismiss or Strike and grants Plaintiff's Motion to Proceed Under a Pseudonym.

The TVPRA provides "a private right of civil action for victims of trafficking." *Ditullio v. Boehm*, 662 F.3d 1091, 1094 (9th Cir. 2011). Under the statute, victims:

> [M]ay bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney fees.

18 U.S.C. § 1595(a). The plain language of the TVPRA provides a civil remedy "both against individuals who directly perpetrate trafficking and against individuals who financially benefit from participation in the trafficking venture." *A.B. v. Shilo Inn, Salem, LLC*, No. 3:23-CV-00388-IM, 2023 WL 8805685, at *3 (D. Or. Dec. 20, 2023); *see also Ditullio*, 662 F.3d at 1094 n.1 (9th Cir. 2011) ("The version of § 1595 enacted in 2003 . . . did not expressly permit recovery against individuals who benefit from participation in a trafficking venture. . . . In the TVPA's 2008 reauthorization, Congress deleted those limitations.").

8 – OPINION & ORDER

## I.   Motion to Dismiss

Defendants argue that "Plaintiff's Complaint does not allege that [they] committed sex trafficking crimes against Plaintiff, nor does it meet the standard set forth under the TVPRA" because "[t]he Complaint does not sufficiently plead the participation or knowledge elements of the statute." Defs.' Mot. 11. The Court finds that Plaintiff sufficiently pleads a beneficiary theory of liability under the TVPRA. The Court further finds that Defendants do not move to dismiss Plaintiff's perpetrator theories of liability.

### A.   Beneficiary Liability

To state a claim under a beneficiary theory of liability under the TVPRA, Plaintiff must allege facts from which the Court can reasonably infer that Defendants "(1) knowingly benefitted, (2) from participation in a venture . . . , (3) which they knew or should have known was engaged in conduct that violated the TVPRA." *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022) (citing 18 U.S.C. § 1595(a)). The Court addresses each element in turn.

#### i.   Knowingly Benefitted Financially

Plaintiff argues that Defendants do not dispute that they knowingly benefited from Plaintiff's trafficking. Pl.'s Opp'n 14, ECF No. 34. The Court agrees with Plaintiff.

"The 'knowingly benefits financially' element of § 1595 'merely requires that Defendant knowingly receive a financial benefit' and the rental of a hotel room—or royalties from that rental—constitutes a financial benefit sufficient to meet this element." *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 936 (D. Or. 2020) (quoting *H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019)). Here, Plaintiff sufficiently alleges this first element by alleging that Defendants received a "steady stream of income that

9 – OPINION & ORDER

Plaintiff's traffickers brought to their motel through room rentals and merchandise purchases." FAC ¶¶ 109, 221. The Court does not read Defendants' briefing as challenging the sufficiency of Plaintiff's FAC as to this first element.

ii.    Participation in a Venture

Defendants argue that Plaintiff does not sufficiently allege that Defendants participated in a venture that was engaged in sex trafficking. Defs.' Mot. 11–14. The Court disagrees.

To satisfy the participation element of a civil TVPRA claim, Plaintiff must sufficiently allege that Defendants "participat[ed] in a venture" that was engaged in sex trafficking. 18 U.S.C. § 1595(a). Further, because Plaintiff does not allege that she was a minor at the time she was trafficked at the Subject Motels, Plaintiff must allege that Defendants participated in a venture involving "force, threats of force, fraud, [or] coercion . . . ." 18 U.S.C. § 1591(a); *see also Shilo Inn, Salem, LLC*, 2023 WL 8805685, at *4 ("[W]hen the victim is an adult, § 1591 only provides a remedy for commercial sex activity involving 'force, threats of force, fraud, [or] coercion.'" (quoting 18 U.S.C. § 1591(a))).

The term "participation in a venture" requires Plaintiff to allege that Defendants "took part in a common undertaking or enterprise involving risk and potential profit." *A.B. v. Interstate Mgmt. Co.*, 746 F. Supp. 3d 997, 1006 (D. Or. 2024) (quoting *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021)). However, "[a plaintiff] need not allege that Defendant had actual knowledge of a venture engaged in trafficking by 'force, threats of force, fraud, [or] coercion' or that Defendant performed an overt act in furtherance of the venture." *Id.* (quoting *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1024–25 (D. Or. 2021)). "In the absence of direct association with traffickers, however, Plaintiff must allege at least a showing of a continuous business relationship between the trafficker and [Defendant] such that it would

10 – OPINION & ORDER

appear that the trafficker and [Defendant] have established a pattern of conduct or could be said to have a tacit agreement." *Id.* (citation modified) (quoting *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 837 (C.D. Cal. 2021), *adh'd to on den. of recons.*, 574 F. Supp. 3d 760 (C.D. Cal. 2021)). "Where the [defendant] provides assistance, support, or facilitation to the trafficker through such a continuous business relationship, a court or jury may infer that the [defendant] and trafficker have a tacit agreement that is sufficient for participation under [§] 1595." *Id.* (citation modified) (quoting *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 559 (7th Cir. 2023)). In finding a continuous business relationship, courts have found that it is sufficient to show that a plaintiff was "repeatedly trafficked" at a particular hotel and that the hotel "provided a service to her trafficker that was tailored to [the trafficker's] needs . . . ." *Doe (S.A.S.) v. ESA P Portfolio LLC*, No. 3:23-CV-06038-TMC, 2024 WL 3276417, at *7 (W.D. Wash. July 2, 2024).

The Court finds that Plaintiff has sufficiently pleaded, at the very least, a tacit agreement in the form of a continuous business relationship as between Plaintiff's traffickers and Defendants, which involved "force, threats of force, fraud, [or] coercion . . . ."[5] 18 U.S.C. § 1591(a). First, Plaintiff alleges that she was repeatedly trafficked at the Subject Motels. *See* FAC ¶ 71 (Plaintiff trafficked at the Portland Inn from 2017 to 2022), ¶ 172 (Plaintiff trafficked at the Palms Motel from 2018 to 2019). And while at the Subject Motels, Plaintiff alleges that she "was brutally beat, raped, tortured, strangled, drugged and forced to engage in commercial sex by criminal sex traffickers . . . ." *Id.* ¶ 57. Second, Plaintiff sufficiently alleges that Defendants provided services to Plaintiff's traffickers that were tailored to their needs. For example, Plaintiff alleges that Defendants would accept cash or items in exchange for rooms. *Id.* ¶¶ 106, 192.

---

[5] The Court does not read Defendants' pending motion as meaningfully arguing that Plaintiff fails to allege direct association between Plaintiff's traffickers and Defendants. The Court therefore does not address that argument.

11 – OPINION & ORDER

Plaintiff further alleges that Defendants accommodated for "extended stays on a day-to-day basis" which were also paid for in cash or items. *Id.* ¶¶ 106, 192. With respect to the Palms Motel, traffickers were allowed to make late payments in anticipation that the traffickers would make money later in the day. *Id.* ¶ 174. Plaintiff also alleges that Defendants would accommodate the traffickers' special requests, such as placing the traffickers and Plaintiff in rooms located away from other guests or in specific locations with easy access. *Id.* ¶¶ 84, 206. Plaintiff also alleges that Defendants did not require her or her traffickers to present identification when renting rooms from Defendants. *Id.* ¶¶ 94, 206. Over the course of these dealings, Plaintiff also alleges that her traffickers "had a symbiotic relationship" with Defendants, *id.* ¶¶ 111, 223, in which Defendants' "employees spoke with Plaintiff's traffickers by name and knew their street names[,]" *id.* ¶¶ 72, 174. Additionally, Plaintiff alleges that the relationship with Defendant Portland Hospitality developed to a point that "[o]ne of Plaintiff's traffickers had sexual relations with an employee of the Portland Inn." *Id.* ¶ 76.

Defendants argue that "Plaintiff's allegations do not go beyond mere observation of Plaintiff by hotel employees and Maruti." Defs.' Mot. 14. The Court disagrees. Plaintiff makes several allegations that Defendants did more than merely observe, including: accepting cash or items in exchange for rooms, FAC ¶¶ 106, 192, renting out rooms located away from other guests, *id.* ¶¶ 84, 206, not requiring identification, *id.* ¶¶ 94, 206, and allowing late payments (specifically at the Palms Motel), *id.* ¶ 174. The Court finds that these alleged accommodations go beyond mere observation.

Defendants argue that the cases which Plaintiff cites are too different for them to apply in the current case; for example, Defendants argue that Plaintiff "attempts to mislead the Court by drawing comparisons and similarities that just do not exist between the facts of this case and

12 – OPINION & ORDER

those found in *A.B. v. Interstate Management Company . . . .*" Maruti Defs.' Reply 6, ECF No. 35; *see also id.* at 7 (tabulating factual differences between *Interstate Management Company* and the current case). Defendants argue that, unlike here, the defendants in *Interstate Management Company* "allowed the trafficker to use [a] discount code" and an "[e]mployee's fiancé was friends with the trafficker." *Id.* at 7.

The Court disagrees with Defendants' argument. Defendants do not explain why the Court needs to find a one-to-one match of the facts in the current case with the facts in other cases to find that Plaintiff sufficiently alleged participation. Take the example of the use of a "discount code" in *Interstate Management Company*. 746 F. Supp. 3d at 1007. The Court does not interpret *Interstate Management Company* as requiring Plaintiff to allege that Defendants allowed the use of a discount code before she can draw analogies to *Interstate Management Company*. Instead, the Court reads the use of discount codes as an allegation of "a service to [a] trafficker that was tailored to [the trafficker's] needs . . . ." *Doe (S.A.S.)*, 2024 WL 3276417, at *7. Here, while Plaintiff does not allege the use of a discount code, she alleges other types of payment arrangements, such as paying for rooms in cash, drugs, or other items. FAC ¶¶ 106, 192; *see also id.* ¶ 174 (alleging that the Maruti Defendants "would allow traffickers to pay late or the next day because they knew the women and girls had to make money for the traffickers and rent"). The Court similarly finds that Plaintiff's allegations of such payment arrangements between Plaintiff's traffickers and Defendants were services tailored to her traffickers' needs.

Defendants finally argue that they did not have "any duty to prevent [Plaintiff's] alleged trafficking at [Defendants'] hotel[s]." Defs.' Mot. 10. The Court agrees that "the TVPRA does not impose an affirmative duty to police and prevent sex trafficking." *Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d at 1027. But because the Court finds that Plaintiff's FAC

13 – OPINION & ORDER

otherwise states a beneficiary theory of liability, this observation does not change the Court's analysis.

The Court finds Plaintiff's FAC sufficiently alleges that Defendants were at least tacitly participating in a trafficking venture.

### iii. Knew or Should Have Known

Defendant argues that Plaintiff does not sufficiently plead that Defendants knew or should have known of their participation in a venture engaged in sex trafficking. Defs.' Mot. 14–21. Plaintiff responds that Defendants did know or should have known of such participation. Pl.'s Opp'n 17–21. The Court agrees with Plaintiff.

To sufficiently plead this final element, Plaintiff must allege that Defendants "knew or should have known" that their participation in a venture "engaged in an act in violation of [the TVPRA]." 18 U.S.C. § 1595(a). Plaintiff "is not required to allege actual knowledge of a sex trafficking venture or the performance of an overt act in order to sufficiently plead the 'participation in a venture' element of her § 1595 claim." *Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d at 937. Rather, Plaintiff may survive a motion to dismiss if she alleges facts that show that Defendants had "constructive notice" of the violative conduct. *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 965 (S.D. Ohio 2019); *see also Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d at 937 ("This Court agrees with statutory construction analysis in *M.A. v. Wyndham Hotels & Resorts, Inc. . . . .*"). Further, "Plaintiff need only assert facts supporting Defendants' constructive knowledge of the venture in which they allegedly participated, i.e., that Defendants 'rented rooms to people they knew or should have known were engaging in sex trafficking.'" *Shilo Inn, Salem, LLC*, 2023 WL 8805685, at *5 (quoting *B.J. v. G6 Hosp., LLC*, No. 22-cv-03765-MMC, 2023 WL 3569979, at *5 (N.D. Cal. May 19, 2023)).

14 – OPINION & ORDER

Courts have considered several indicia to be relevant in sufficiently pleading knowledge, including: "visible signs of abuse, such as malnourishment; the trafficker overtly exerting control over the plaintiff in public areas of the hotel; screaming or noise from the plaintiff's hotel room; or traffickers or others physically assaulting the plaintiff in public areas of the hotel." *A.B. v. Interstate Mgmt. Co., LLC*, No. 3:23-CV-00388-IM, 2024 WL 5264652, at *2 (D. Or. Dec. 31, 2024). Other indicia include being "inappropriately dressed for the weather . . . ." *Id.* at *3.

Here, Plaintiff sufficiently pleads this final element. Plaintiff alleges the same facts as described in *Interstate Management* during her stays at the Subject Motels. Specifically, Plaintiff alleges visible signs of her traffickers' abuse both by "visible injuries on [her] face and body" and by "being hit and beat by her traffickers" in ways that "employees and owners witnessed" at the Portland Inn and Palms Motel. FAC ¶¶ 73, 178. Plaintiff also alleges that Defendants witnessed Plaintiff screaming and crying. *Id.* When such beatings were not seen, Plaintiff alleges that her beatings "would be loud events" which were "audible to staff and other rooms . . . ." *Id.* ¶¶ 81, 84, 189, 192. Plaintiff also alleges that Defendants could witness "Plaintiff wearing clothing inappropriate for the weather . . . ." *Id.* ¶¶ 84, 192. The Court finds that these allegations are also allegations that her traffickers overtly exerted control over her at the Subject Motels.

While these allegations alone are sufficient to allege that Defendants knew or should have known of their participation in a trafficking venture, Plaintiff further alleges here that the owners and managers of both the Subject Motels "lived on-site" and "saw and heard the sex trafficking occurring day in and day out." *Id.* ¶¶ 86, 194. Plaintiff also alleges that she and her traffickers would be present at check in "in plain sight" of the owners of the Portland Inn and Palms Motel. *Id.* ¶¶ 100, 212. From these interactions, Plaintiff alleges that the owners could see Plaintiff in a "scared, timid, nervous, abused, battered[,] and sad" state. *Id.*

15 – OPINION & ORDER

Defendants argue that Plaintiff's allegations rely too heavily on articles, papers, and other sources to allege "[k]nowledge of sex trafficking occurring in the hotel industry across the United States . . . ." Defs.' Mot. 20. The Court agrees that "[g]eneral knowledge of commercial sex activity occurring at hotels across the United States is insufficient *on its own* to demonstrate Defendants participated in the trafficking of Plaintiff." *Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d at 938 (emphasis added). But as discussed above, Plaintiff does not solely rely on these general allegations; instead, she alleges that Defendants—both employees and owners— witnessed many signs of Plaintiff's trafficking at the Subject Motels. FAC ¶¶ 73, 178. Defendants' argument as to Plaintiff's reliance on online reviews left by other guests fails for the same reason. *See* Defs.' Mot. 20–21.

The Court finds that Plaintiff's FAC sufficiently alleges this final element and, by extension, a beneficiary theory of liability against Defendants.

B.      Perpetrator Liability

Plaintiff argues that Defendants do not move to dismiss her claim asserting either of her perpetrator theories of liability and "therefore waive any argument to that end." Pl.'s Opp'n 21. Defendants argue that "one of the theories, in particular, was addressed in detail and was a key focus for multiple pages."[6] Maruti Reply 7. The Court agrees with Plaintiff. While Defendants mention Plaintiff's beneficiary theory of liability, *see* Defs.' Mot. 15, they never explicitly mention Plaintiff's perpetrator theories of liability. Instead, Defendants' arguments, in structure and substance, appear to respond only to Plaintiff's beneficiary theory of liability.[7] Therefore, the

---

[6] Defendants only cite "*Id.*" as a citation supporting this assertion. Maruti Reply 7 n.13. The Court finds this citation to be incorrect.

[7] For example, Defendants open their argument with a rule statement "[t]o bring a financial beneficiary claim under § 1595(a)," but never provide a rule statement to bring a perpetrator claim. Defs.' Mot. 11.

16 – OPINION & ORDER

Court does not consider any new arguments Defendants make in their reply briefs with respect to Plaintiff's perpetrator theories of liability. *See Dzyuba v. United States*, No. 3:11-CR-00209-JO-01, 2016 WL 4367247, at *1 (D. Or. Aug. 15, 2016) (finding a party's reply brief "overly broad because it raises new arguments that are beyond the scope of the [other party's] response"). To the extent Defendants challenge Plaintiff's perpetrator theories of liability for the same reasons as those presented in moving to dismiss Plaintiff's beneficiary theory of liability, the Court rejects those arguments for the same reasons as outlined earlier in this Opinion & Order. *See, e.g.*, Portland Hospitality Reply 3 ("Defendants' briefing focuses on 'beneficiary' cases because the standard of conduct necessary to allege a 'beneficiary' claim is equal to—if not lower than— the standard required to allege a 'perpetrator' claim."), ECF No. 36.

## II.     Motion to Strike

Defendants alternatively move to strike various paragraphs from Plaintiff's FAC.[8] Defs.' Mot. 21–26. The Court declines to do so.

Defendants first argue that "paragraphs 1 through 5 and 17 through 70 are unnecessary and should be stricken." Defs.' Mot. 23. But whether a paragraph is "necessary" is not the correct question in determining whether a court should grant a motion to strike. Rather, courts may strike any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Court instead asks whether Plaintiff's allegations are immaterial, which appears to be the closest fit to Defendants' reasoning here. An "immaterial" matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc.*, 984

---

[8] Defendants specifically seek to strike the following paragraphs: 1–5, 17–70, 74–95, 97, 102, 172–228. Maruti Reply 8. The Court does not read Defendants' briefing as meaningfully explaining how "[p]aragraphs 74–95, 97, and 102" are immaterial, impertinent redundant, or scandalous. Defs.' Mot. 26. The Court therefore declines to strike these paragraphs.

17 – OPINION & ORDER

F.2d at 1527 (internal citation omitted). But Defendants do not explain how general allegations of commercial sex trafficking have *no* relationship to Plaintiff's TVPRA claims. While allegations of "[g]eneral knowledge of commercial sex activity occurring at hotels across the United States is insufficient on its own to demonstrate Defendants participated in the trafficking of Plaintiff[,]" *Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d at 938, the Court cannot find on its own review any authority supporting Defendants' argument that the Court must also strike such allegations, *see Interstate Mgmt. Co.*, 2024 WL 5264652, at \*5 (declining to strike "allegations that cite reports, articles, and online stories about sex trafficking in the hospitality industry"). Accordingly, the Court declines to strike these allegations.

Defendants next ask the Court to strike "paragraphs 1 through 5 and 17 through 70[,]" and "paragraphs 172 [through] 228" as redundant. Defs.' Mot. 23–26. But "[a] motion to strike pursuant to Rule 12(f) should be denied unless the moving party can show both that the challenged allegations can have no possible bearing on the subject matter of the litigation and that the challenged allegations will be prejudicial to it." *Bonneau v. Progressive Universal Ins. Co. of Illinois*, No. CV 10-920-PK, 2011 WL 1337379, at \*4 (D. Or. Feb. 9, 2011), *report and recommendation adopted*, No. CV 10-920-PK, 2011 WL 1325086 (D. Or. Apr. 7, 2011). Here, the Court finds that Defendants do not show how any of the repeated allegations in Plaintiff's FAC are prejudicial to Defendants. Additionally, the Court notes that the paragraphs Defendants seek to be stricken—paragraphs 172 through 228—are nearly every allegation specific to the Maruti and Patel Defendants. For these two reasons, the Court declines to strike these paragraphs.

Defendants finally ask that the Court strike paragraph fifty-three as "unnecessary and overtly racist." Defs.' Mot. 26. Plaintiff responds that this allegation provides "background

18 – OPINION & ORDER

information" that "would be admissible at trial" and that Plaintiff "does not offer it for an improper purpose." Pl.'s Opp'n 23–24 n.5. Again, the plain language of Rule 12(f) does not provide that a Court may strike matters that are "unnecessary" or "racist." The Court instead finds that the best course of action is to determine whether the allegations in paragraph fifty-three are "scandalous" under Rule 12(f). The Court finds that they are not. Scandalous allegations are those which "improperly cast[] a derogatory light" on opposing litigants. *Ionian Corp. v. Country Mut. Ins. Corp.*, 88 F. Supp. 3d 1187, 1202 (D. Or. 2015) (quoting *Germaine Music v. Universal Songs of Polygram,* 275 F.Supp.2d 1288, 1300 (D. Nev. 2003), *rev'd on other grounds*, 130 F. App'x 153 (9th Cir. 2005)). A court may also strike an allegation as scandalous if "the matter bears no possible relation to the controversy or may cause the objecting party prejudice." *Cantu v. City of Portland*, No. 3:19-CV-01606-SB, 2020 WL 2952972, at *2 (D. Or. June 3, 2020). While it is unclear at this early stage of the litigation how paragraph fifty-three may eventually relate to this litigation, the Court cannot conclude—nor do Defendants explain how—the allegation improperly casts a derogatory light on Defendants. The Court therefore declines to strike paragraph fifty-three of Plaintiff's FAC.

### III.    Motion to Proceed Under a Pseudonym

Plaintiff also moves to proceed in this case under a pseudonym. *See generally* Pl.'s Mot. Defendants do not object. *See generally* Defs.' Resp. A party may only proceed with a pseudonym in court proceedings "when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Doe 130 v. Archdiocese of Portland in Oregon*, No. CV. 07-1732-PK, 2008 WL 656021, at *1 (D. Or. Mar. 6, 2008) (quoting *Doe v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000)). Parties in this circuit need not obtain the court's leave before filing an anonymous pleading. *Doe v.*

19 – OPINION & ORDER

*Penzato*, No. CV10-5154 MEJ, 2011 WL 1833007, at *4 (N.D. Cal. May 13, 2011) ("Although some Circuits require plaintiffs to obtain leave of the court before filing an anonymous pleading, the Ninth Circuit does not."). As is evident from the discussion of the facts in this Opinion & Order, the Court finds that the need for anonymity outweighs any prejudice to Defendants or the public. Accordingly, the Court will allow Plaintiff to proceed anonymously in this case.

**CONCLUSION**

The Court DENIES Defendants' Motion to Dismiss or Strike [29], [30], and [31]. The Court additionally GRANTS Plaintiff's Motion to Proceed Under a Pseudonym [41].

IT IS SO ORDERED.

DATED this __1st__ day of April, 2026.

*Amy M. Baggio*
AMY M. BAGGIO
United States District Judge

20 – OPINION & ORDER